MATHILDA HUNZIKER, PROSECUTOR, v. NATHANIEL KENT, PROSECUTOR OF THE PLEAS OF PASSAIC COUNTY, DEFENDANT.

Argued March 11, 1933—Decided October 31, 1933.

Argued before Justice HEHER, pursuant to the statute.

For the prosecutor, *Minturn & Weinberger.*

For the defendant, *John D. Masterton.*

HEHER, J.   On September 16th, 1930, the then prosecutor of the pleas of the county of Passaic appointed the prosecutor of this writ (hereinafter referred to as the plaintiff) to the position of telephone operator in his office, under the provisions of the Civil Service act.   Plaintiff had qualified in a competitive examination held in accordance with the provisions of that statute.   On July 8th, 1932, the present prosecutor of the pleas (hereinafter referred to as the defendant) advised plaintiff, by letter, that inasmuch as he had found that the "work can be satisfactorily handled by other employes of the office," he had "decided to abolish the position of telephone operator in the interest of economy," and that her services would not be required after July 15th then next.

The power of defendant to abolish this position for reasons of economy cannot be challenged. The Civil Service act recognizes such right. *Pamph. L.* 1918, *p.* 776; *Pamph. L.* 1930, *p.* 606, 623. But plaintiff insists that the position was not, in fact, abolished, and that, even so, the action taken is ineffective because defendant was "motivated by bad faith, and not for reason of economy," and she was not afforded a hearing.

The position was abolished in fact. Defendant so characterized his action in the notice served upon plaintiff. His intent and purpose are clearly manifested. That such was the effect of the action taken can hardly be questioned. No one was appointed to the position vacated by plaintiff. Her duties were transferred to clerk-stenographers and other members of the departmental staff, who assumed, apparently without undue interference with the performance of the duties appertaining to their respective positions, the work theretofore done by plaintiff.

It is said, however, that defendant, in testimony given in this cause, admitted that such was not his purpose. He testified as follows: "*Q.* You say that there will be a lack of funds commencing about October 1st? *A.* Correct. *Q.* It isn't your intention to abolish the office? *A.* It isn't within my contemplation." What he intended to convey by this statement is not clear. It is doubtful that he had plaintiff's position in mind. He had previously testified that the departmental appropriation would be entirely exhausted in one month, and he may have interpreted the question as an argumentative query as to what he would do when the appropriation was wholly expended. The inquiry along this line was not pursued further, and this alleged admission is entirely too vague and indefinite to overcome the formal declaration of abolition, and the evidence demonstrating such to have been defendant's intent and purpose. However, if it were merely a lay-off due to lack of funds, plaintiff cannot complain. This is also a right recognized by the Civil Service act. *Pamph. L.* 1918, *p.* 776; *Pamph. L.* 1930, *p.* 606, 623.

As to the second point, it is incumbent upon plaintiff to show that the position was not abolished for the purpose of

economy. *Colgarry* v. *Street Commissioners of Newark,* 85 *N. J. L.* 583. The presumption of good faith arises, and the burden is on plaintiff to show bad faith.

In substantiation of the claim that defendant was actuated by an ulterior purpose, it is pointed out that, in July, 1931, he illegally removed plaintiff from her position, and took the action now brought up for review within three weeks after she had been restored to her position, in accordance with the judgment of this court. See *Hunziker* v. *Civil Service Commission,* 10 *N. J. Mis. R.* 828; 160 *Atl. Rep.* 828. While this is significant, it obviously does not furnish the basis for a conclusive inference of bad faith. Assuming, without deciding, that this circumstance was sufficient to overcome the presumption of good faith, and to cast the burden upon him, defendant satisfied the obligation thus imposed. He insisted that his sole purpose was to reduce departmental operating costs, and that retrenchment was made imperative by financial stringency. The financial affairs of the county had reached an acute stage. On July 1st, 1932, the county defaulted on its payroll. The appropriation for the prosecutor's office, for the year 1932, was $45,000 less than the appropriation for the prior year, and he found that the sum allotted would be exhausted in one month. He reduced the office staff. The services of one investigator and three of the eight women were dispensed with. He concluded that plaintiff's position was unnecessary. Departmental efficiency would not be impaired by abolition of her position. He planned to return to the method of operating the telephone system in vogue prior to November 8th, 1930, when the position was created. It was then managed by the office staff. The proofs warrant a finding that this position is unnecessary.

The abolition of an office or position must, of course, be *bona fide.* It must not be a mere device resorted to for the purpose of removing an officer or employe, while the office or position practically still remains in existence. Such a subterfuge would be of no avail. *Cf. Evans* v. *Board of Chosen Freeholders,* 53 *N. J. L.* 585. *McChesney* v. *Trenton,* 50 *Id.* 338. It must not be a mere colorable abolition. It is not suggested here that the position was abolished tem-

porarily, for the purpose of later re-establishing it, and installing another therein.

That there are considerations other than economy in the abolition of an office or position is of no consequence, if, in fact, the office or position is unnecessary, and can be abolished without impairing departmental efficiency. The motive for the abolition of a useless position is immaterial. Public policy requires that course. It would be absurd to hold that a needless position must be continued in existence because an ulterior purpose influenced or played some part in its abolition. As was said by Mr. Justice Kalisch, in *Paddock* v. *Hudson Tax Board,* 82 *N. J. L.* 360: "It was not the design of the civil service law to perpetuate offices regardless of the fact whether they were needed or not. The very spirit of good government intends that useless offices drawing revenue from a municipality or state should be abrogated, and it would be regarded as a betrayal of a solemn trust for a body politic to convert offices contemplated under the civil service law into sinecures or pension places."

Plaintiff was not entitled to a hearing. The Civil Service act does not provide that when positions are abolished in the interest of efficient and economical administration, the employes thus affected shall be entitled to notice and an opportunity to be heard in relation to such a proceeding. *Colgarry* v. *Street Commissioners of Newark, supra.*

Writ dismissed, but without costs.