## CLARK v. DETROIT POLICE COMMISSIONER.

1. MUNICIPAL CORPORATIONS—POLICE FORCE—REDUCTION IN RANK—RETIREMENT—CHARTERS.

After commissioner of police had abolished certain ranks in city police force and reduced the incumbents to lower ranks and incumbents immediately requested to be placed on the retired list, where charter required that retirement be deferred until after elapse of 30 days from approval of request by the police merit board and retirement was effected pursuant thereto, the interim service of such members of the force was in the lower rank and upon retirement they were entitled to half pay of such lower rank rather than half pay of a rank previously held (Detroit charter, title 4, chap. 21, § 14, as amended April, 1939; § 23, as amended March, 1923).

2. SAME—ASSISTANT DEPUTY CHIEF OF DETECTIVES—RETIREMENT
PAY.

> Assistant deputy chief of detectives who had requested that
> he be placed on retirement list, had procured approval of
> request by police merit board and the police commissioner,
> was entitled to retirement pay at half the rate of pay for
> rank in which he served until retirement notwithstanding
> police commissioner's abolition of the office upon the in-
> cumbent's retirement and subsequent attempt to have re-
> tirement pay based on pay for next lower rank (Detroit
> charter, title 4, chap. 21, § 14, as amended April, 1939; § 23,
> as amended March, 1923).

3. SAME—POLICE COMMISSIONERS—ABOLITION OF CERTAIN RANKS OF
. OFFICERS—HEARING.

> Under police merit board amendment to charter providing that
> it was not to be interpreted as limiting the power of the
> police commissioner to promote officers above the grade of
> inspectors or to assign or transfer all officers and other
> employees to duty in which no change in rank or compensa-
> tion is involved, the commissioner was empowered to abolish
> the ranks of chief and district inspectors in the uniform
> division and district detective inspector and reduce incum-
> bents to rank of inspector or detective inspector respectively
> for *bona fide* reasons of economy without a hearing before
> the police merit board (Detroit charter, title 4, chap. 21,
> § 14, as amended April, 1939).

4. SAME—POLICE COMMISSIONER—POLICE MERIT BOARD—CREATION
AND ABOLITION OF RANKS.

> Provision of police merit board amendment of charter that it
> was not to be interpreted as limiting the power of the police
> commissioner to promote officers above the grade of inspectors
> or to assign or transfer all officers and other employees to
> duty in which no change in rank or compensation is involved,
> does not interfere with the power of the police commissioner,
> without a hearing, to create and abolish ranks and offices in
> the interest of economy and efficiency (Detroit charter, title 4,
> chap. 21, § 14, as amended April, 1939).

5. COSTS—MANDAMUS—PUBLIC QUESTION.

> No costs are allowed in mandamus proceedings to compel pay-
> ment of pensions to retired police officers at one-half the
> pay of abolished ranks either where the writ is granted or
> refused, a public question being involved (Detroit charter,
> title 4, chap. 21, § 14, as amended April, 1939; § 23, as
> amended March, 1923).

Appeal from Wayne; Keidan (Harry B.), J. Submitted May 6, 1941. (Calendar No. 41, 502.) Decided September 2, 1941.

Separate petitions for mandamus by Fred R. Clark, Frank J. Burczyk, Henry J. Garvin, William G. Rick and George J. Smith against Frank D. Eaman, Detroit Police Commissioner, and Albert E. Cobo, Detroit City Treasurer, to compel defendants to pay plaintiffs certain amounts of retirement pay. Cases consolidated for trial. Writs granted. Defendants appeal. Reversed except as to plaintiff Smith.

*George A. Kelly* and *Walter E. Kelly,* for plaintiffs.

*Paul E. Krause,* Corporation Counsel, and *John H. Witherspoon,* Chief Assistant Corporation Counsel, for defendants.

Butzel, J. Five petitions for mandamus were consolidated, tried together and brought here on one record. Petitioners are all retired members of the Detroit police department, each of whom, at the date of his retirement, had served more than 25 years in the department and was, therefore, entitled to pension "at the rate of one-half of the pay of the rank in which such member was serving at the time of retirement," according to the charter of the city of Detroit, title 4, chap. 21, § 23 (as amended March 19, 1923).

At various dates ranging from 1936 to 1939, petitioners had been promoted: Clark became chief inspector and Burczyk and Rick became district in-

spectors in the uniform division; Garvin became district detective inspector and Smith became assistant deputy chief of detectives. All were serving in the mentioned ranks when respondent Frank D. Eaman became commissioner of police on January 2, 1940.

Commissioner Eaman, whose good faith is not impugned, desiring (1) to effect economies in the departmental budget, and (2) to improve the administrative contact between himself and the precincts by eliminating what he considered to be needless intermediary offices, signed orders on January 15, 1940, abolishing the ranks of chief and district inspector (uniform division) and of district detective inspector, and reducing the incumbents to the ranks of inspector and detective inspector, respectively.

Immediately thereafter requests to be placed on the retired list were forthcoming from Clark, Burczyk, Rick and Garvin, the four petitioners affected. The commissioner was powerless to retire them until after 30 days from approval of their requests by the police merit board, under title 4, chap. 21, § 14 (b), as amended effective April 11, 1939, by charter amendment No. 14. The merit board did approve their requests, and the commissioner did retire them on March 21, 1940, seven weeks after the orders abolishing their former ranks and reducing them to the next lower ranks had become effective. Meanwhile they had not resigned, died, nor been removed from the force. It follows that they had been serving in this seven weeks' interim, not in their former ranks, for they had been abolished, but in the lower ranks to which the commissioner had reduced them. At the time of retirement, therefore, each was serving in the rank of inspector or detective inspector, and is entitled to pension at one-half the rate of pay of such lower rank.

Petitioner Smith had requested to be placed on the retired list on January 12th, and his rank of assistant deputy chief of detectives was not among those abolished on January 15. The merit board approved his retirement, and on the thirty-first day after such approval, March 4, 1940, the commissioner (1) unqualifiedly approved Smith's retirement, and (2) signed an order which abolished his rank, but did not transfer or reduce him to any other rank. In consequence Smith was serving in his rank of assistant deputy chief of detectives at the date of his retirement, and the pension to which he is entitled is one-half of the rate of pay of that rank. It is true that the order abolishing Smith's rank attempted to make itself retroactive to February 24, 1940, but no stroke of the pen could alter the fact that Smith was serving in the rank of assistant deputy chief of detectives when he was retired. Also, the commissioner attempted to ignore his earlier unqualified retirement of Smith, signed March 4th, by signing another retirement-approval for Smith (along with those signed for the other petitioners) on March 21st, which later retirement declared Smith entitled to pension as detective inspector only, from February 24th on. This too was ineffectual. An officer can be retired only once.

The four petitioners insist that the orders of January 15, 1940, reducing them in rank and compensation, are invalid, in that they contravene title 4, chap. 21, § 14(c), as amended effective April 11, 1939, by charter amendment No. 14, which reads:

"(c) This section [*i.e.,* § 14, the police merit board amendment] shall not be interpreted in any manner to limit the power of the commissioner to promote officers above the grade of inspector or to assign or transfer all officers and other employees

to duty in which no change in rank or compensation is involved."

The police merit board amendment (charter amendment No. 14) inaugurated a species of civil service system in the Detroit police department.

In *Fricke* v. *City of Grand Rapids,* 278 Mich. 323, we were called upon to determine the validity of an order of the city manager of Grand Rapids discharging several patrolmen from the Grand Rapids police force, which was part of the classified civil service of that city. The similarity between the civil service provisions of the charter of the city of Grand Rapids (title 7, § 9) and those of charter amendment No. 14, subsection (c), is striking. Title 7, § 9, applicable to the policemen in the *Fricke Case,* reads:

"No employee under the classified service shall be discharged or reduced in rank or compensation until he has been presented with the reasons for such discharge or reduction specifically stated in writing, and has been given an opportunity to be heard in his own defense [before the civil service board]."

We held:

"Authorities universally sustain the proposition that a city can dismiss a civil service employee by abolishing the position which the employee holds. *Smith* v. *Flint City Commission,* 258 Mich. 698, and cases cited therein; and that a city may abolish a position for *bona fide* reasons of economy, *Slavin* v. *City of Detroit,* 262 Mich. 173. It is conceded by plaintiffs that if an office or position in the city government is abolished for *bona fide* reasons of economy, the holder of that position is not entitled to a hearing before the civil service board under the civil service provisions of the city charter; and that

the city manager is the person to decide how many patrolmen should be at any given time in the police department.''

We held that the discharges in the *Fricke Case* were valid, because made for *bona fide* reasons of economy. In concluding that the discharges were *bona fide* we observed (278 Mich. 323, at 330):

''It is significant that after the dismissal of plaintiffs, no officers were appointed or hired to take their place.''

If the words ''reduction in rank'' be substituted for ''dismissal,'' that observation is equally applicable to the case at bar.

Since title 7, § 9, of the charter of the city of Grand Rapids prohibits reduction in rank or compensation as well as discharge, except upon hearing before the civil service board, our decision in the *Fricke Case* that discharge for *bona fide* reasons of economy is valid without such hearing would support a reduction in rank or compensation for the same reasons, without hearing.

Appellees claim that charter amendment No. 14, subsection (c), impliedly prohibits reduction in rank or compensation (making no provision, ''except upon hearing before the police merit board''). Its purpose is the same as that of the quoted provision from the Grand Rapids charter (title 7, § 9), and it is subject to the same construction. It does not interfere with the power of the police commissioner of Detroit to create and abolish ranks and offices in the interest of economy and efficiency, as announced in *Slavin* v. *City of Detroit, supra.* It no more has that effect than the similar civil service provision (Detroit charter, title 4, chap. 2, § 18) had in the

companion case of *Stanton* v. *City of Detroit,* 262
Mich. 173, with respect to the corresponding power
of the Detroit board of fire commissioners.   See,
also, 2 Dillon, Municipal Corporations (5th Ed.),
§ 479.

The commissioner made no effort to cut off peti-
tioners' right to pension by removing them from
the force without cause.   His action in reducing
them to the next lower ranks, at the time of abol-
ishing their former ranks, is ample proof of his de-
sire to treat them fairly.   Appellees ask us to ex-
tend the charter provisions so as to entitle officers to
pensions after 25 years of service at a rate based
on the highest positions they held, even for a short
period, although the positions were abolished for
efficiency purposes and the officers were reduced to
the next lower position.   If this result is desirable,
it can be brought about by charter amendment.

The order of the circuit court granting manda-
mus to compel payment to petitioners of pensions
at the rate of one-half the pay of the abolished rank,
as to petitioner Smith, is affirmed, but as to the other
four petitioners, it is reversed.   As a public ques-
tion is involved, no costs will be allowed.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER,
NORTH, and WIEST, JJ., concurred.   MCALLISTER,
J., took no part in this decision.