31 N.J. Super. 404 (1954)
107 A.2d 55
JAMES CHIRICHELLA, APPELLANT,
v.
THE DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY AND THE CITY OF HOBOKEN, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 28, 1954.
Decided July 16, 1954.
*405 Before Judges EASTWOOD, FREUND and FRANCIS.
Mr. Jack Geddy Goldberg argued the cause for the appellant.
Mr. E. Norman Wilson argued the cause for the respondent, The City of Hoboken (Mr. Joseph B. McFeely, attorney).
*406 The opinion of the court was delivered by EASTWOOD, S.J.A.D.
On May 23, 1947, the appellant, James Chirichella, was appointed "Secretary to the Director" of Public Affairs of the City of Hoboken, by the then director of that department, Fred M. DeSapio, which appointment was approved by resolution of the board of commissioners on on the same date. On June 3, 1947, the board of commissioners adopted an ordinance creating the position of secretary to the director of the department of public affairs and on the following day, June 4, 1947, Director DeSapio notified Chirichella by letter of his appointment as such secretary.
At the time of appellant's appointment the city was operating under the commission form of government pursuant to R.S. 40:72-4 et seq. The powers of the commission were distributed among five departments, among which was the department of public affairs.
In November, 1952, the voters at the General Election adopted Plan "D" of the act known as the "Faulkner Act," P.L. 1950, c. 210 (R.S. 40:69A-1 et seq.) to become effective July 1, 1953. At an election held on May 12, 1953, pursuant to the Faulkner Act, the voters elected a mayor and nine councilmen.
On July 1, 1953, at the organizational meeting under the new form of government, several ordinances were introduced and adopted by the mayor and council setting up six departments of government in the place of the five departments theretofore existing under the former commission form of government. The department of public affairs was not recreated. Its former functions were allocated and distributed to and among the several newly created departments.
The appellant continued as such secretary until July 2, 1953, when he was verbally advised by the director of the department of law that his services were no longer required. Upon protesting the manner and form of such dismissal, he received a letter from the director dated July 2, 1953, informing him that his services as secretary ended at noon on July 1, 1953.
*407 On August 3, 1953, the city counsel adopted an ordinance repealing the ordinance of June 4, 1947 (which had created the position of secretary to the director of the department of public affairs), and also abolishing the positions of secretary to the following departments: public safety, revenue and finance, public works and parks and public property. At the same meeting, the council also adopted an amendment to the ordinance of December 29, 1950, abolishing the positions of secretary to the departments of public affairs, revenue and finance, public safety, public works and parks and public property.
The appellant contends that (1) the Civil Service and Faulkner Act and statutes control issues relating to appellant's appointment, position, discharge and continuance thereof; and (2), that his discharge was invalid in that the position of an employee with civil service status may not be abolished by a director of a department or mayor of a municipality without ordinance of the governing body of the municipality so authorizing.
No issue is raised by this appeal respecting appellant's appointment in 1947 as secretary to the department of public affairs, nor to his continuance thereof until July 1, 1953, when Plan "D" of the Faulkner Act became effective.
This appeal poses only one question, viz.: Was Chirichella's position lawfully terminated either by the adoption of the Faulkner Act or by the ordinances hereinbefore mentioned abolishing that position and creating new departments, which did not include a department of public affairs, or both?
To determine the issue, we think it is only necessary to pass upon the legislative action taken by the council at the time of and subsequent to the organization meeting under the provisions of the Faulkner Act.
The city contends that on July 1, 1953, when council organized under the Faulkner Act, all ordinances and resolutions inconsistent with the Faulkner Act, were superseded, relying upon the provisions of L. 1950, c. 210 (R.S. 40:69A-1 *408 et seq.) the pertinent section 17-57 (R.S. 40:69A-206) providing:
"Upon the effective date of an optional charter adopted pursuant to this act, any other charter and its amendments and supplements theretofore applicable to the municipality shall be superseded with respect to such municipality. All ordinances and resolutions of the municipality to the extent that they are not inconsistent with the provisions of this act shall remain in full force and effect until modified or repealed as provided by law."
The city contends further that under the provisions of the Faulkner Act the selection of the number of departments and their make-up was entirely and exclusively delegated to the council, as appears by L. 1950, c. 210, § 17-58 (R.S. 40:69A-207), to wit:
"At twelve o'clock noon on the effective date of an optional plan adopted pursuant to this act, all offices then existing in such municipality shall be abolished and the terms of all elected and appointed officers shall immediately cease and determine; provided, that nothing in this section shall be construed to abolish the office or terminate the term of office of any member of the board of education, trustees of the free public library, or of any official or employee now protected by any tenure of office law, or of any policeman, fireman, teacher, principal or school superintendent whether or not protected by a tenure of office law. If the municipality is operating under the provisions of Title 11 of the Revised Statutes (Civil Service) at the time of the adoption of an optional plan under this act, nothing herein contained shall affect the tenure of office of any person holding any position or office coming within the provisions of said Title 11 as it applies to said officers and employees."
Appellant cites the following statutory provisions in support of the contention that his right to a continuance of said employment is protected by his classified civil service status, to wit: R.S. 11:22-26(c) (effective at the time of his appointment), providing that the exempt class of the classified service shall include "One secretary or clerk of each department, appointed board or commission authorized by law to appoint a secretary or clerk"; R.S. 11:7-14 (P.L. 1948, c. 121, § 9), repealing the exempt classification of positions, but providing that the taking effect thereof "* * * shall not in any manner affect the civil service status of any person *409 holding office or position in the classified or unclassified division of the civil service of the State or any county, municipality or school district on the date when this act takes effect"; L. 1950, c. 210 (R.S. 40:69A et seq.) known as the Faulkner Act, and particularly sec. 15-17 (R.S. 40:69A-207) thereof, providing that
"* * * If the municipality is operating under the provisions of Title 11 of the Revised Statutes (Civil Service) at the time of the adoption of an optional plan under this act, nothing herein contained shall affect the tenure of office of any person holding any position or office coming within the provisions of said Title 11 as it applies to said officers and employees;" and
sec. 43(d), of the Faulkner Act concerning the appointment of subordinate officers and employees by department heads and the removal thereof "* * * subject to the provisions of the Revised Statutes, Title 11, Civil Service, where that Title is effective in the municipality, or other general law; * * *."
Appellant argues that the action taken to terminate his employment was actuated by political motives, primarily because of his active support of candidates opposed to those who were successful. However, the record is entirely barren of any proof to support that assertion.
It is the contention of the city that the appellant's right, if any, to the position was terminated not only by the Faulkner Act and the action taken by the city council under the authority thereof, but also by the abolishment of the position by appropriate ordinance; by the council's failure to re-create that department or the position in question in the new form of government; and by the allocation of the functions of the abolished department to other departments created under the new form of government, thereby accomplishing certain economies. Incidentally, under the commission form of government, each department had a deputy director, in addition to the secretarial positions.
The acts of the local governing body are presumed to be valid and the burden of establishing their invalidity or *410 that they were undertaken in bad faith is cast upon one who challenges the validity thereof. If the presumption is not overcome by sufficient proofs, it is of no consequence that there is proof showing that consideration other than economy played some part in that action. Gianettino v. Civil Service Commission, 120 N.J.L. 531 (Sup. Ct. 1938); Schnipper v. Twp. of North Bergen, 13 N.J. Super. 11 (App. Div. 1951); City of Camden v. Civil Service Commission, 118 N.J.L. 501 (Sup. Ct. 1937); Santucci v. Paterson, 113 N.J.L. 192 (Sup. Ct. 1934); Kessel v. Civil Service Commission, 130 N.J.L. 618 (Sup. Ct. 1943). The appellant here failed utterly to establish such invalidity or bad faith.
Regardless of the action taken by council, acting under the provisions of the Faulkner Act to abolish the appellant's position, it has always been the settled rule of law that the governing body of a municipality may, by appropriate action, dispense with and abolish positions of public employment the need for which no longer exists; and that the abolishment of needless positions and to effect economy is in the public interest. Hunziker v. Kent, 111 N.J.L. 565 (Sup. Ct. 1933), cited in 172 A.L.R. 1371; Kessel v. Civil Service Commission, supra; Sieper v. Dept. of Civil Service, Passaic, 21 N.J. Super. 583 (App. Div. 1952); Schnipper v. Twp. of North Bergen, supra.
We are satisfied that the action of the city as sustained by the department of civil service was properly undertaken and its validity is supported by the proofs. The appellant has been accorded the protection to which he was entitled under the civil service law by placing his name upon a reemployment list as provided by Section 11:22-10.1. Gianettino v. Civil Service Commission, supra; Benzoni v. Dept. of Civil Service, 10 N.J. Super. 103 (App. Div. 1950); Elwell v. North Bergen Twp., 13 N.J. Super. 330 (App. Div. 1951).
At the argument, appellant called attention to the recent adoption by both houses of the Legislature of Assembly Bill No. 141, and the approval thereof by the Governor on June *411 24, 1954 (L. 1954, c. 62). This supplement permits the director of each department in any city of the second class which has adopted or shall hereafter adopt the form of government designated as "Mayor-Council Plan D" as provided in Article 6 of the Faulkner Act, to appoint a deputy director of his department "Who shall serve, and be removable at the pleasure of the director in the unclassified service of the Civil Service of the City." It has no relevancy or materiality to the issue before us. It concerns the appointment of the deputy director of any department of such city  the appellant never held such a position. The introductory statement of the bill sets forth that: "This provision is similar to that contained in the commission government act which authorizes the directors of the departments, in cities of the first and second class operating under that act, to make such appointments."
The order of the civil service department is affirmed, without costs.