The City and County of Denver, a municipal corporation; Manager of Safety, Daniel P. Cronin, and Myrle K. Wise, Chief of the Denver Fire Department v. The District Court of the Second Judicial District in and for the City and County of Denver, State of Colorado, The Honorable Robert T. Kingsley, and The Honorable Mitchel B. Johns, Judges thereof, et al.

## No. C-1238

The City and County of Denver, Mayor William H. McNichols, Jr., Manager of Safety, Daniel P. Cronin, Myrle K. Wise, Chief of the Denver Fire Department v. Thomas H. Martelon, et al., and Wilmett L. Kraft, et al., and Daniel R. Jean, et al.

(582 P.2d 678)

Decided July 31, 1978.

Max P. Zall, City Attorney, Brian H. Goral, Assistant, Stanley H. Ereckson, Jr., Assistant, Robert H. Dowler, Assistant, for petitioners and defendants-appellants.

Geer & Goodwin, P.C., Robert E. Goodwin, for respondents and plaintiffs-appellees.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

The controversy involved in these consolidated cases arose as a result of budgeting decisions made by the Mayor and City Council in the preparation and adoption of the 1976 budget for the City and County of Denver.

In December 1975, the Manager of Safety and the Fire Chief of the City and County of Denver issued orders demoting sixty Fire Department Captains to the rank of Lieutenant and reassigning eighty-seven Technicians to the rank of Firemen First Grade. The City announced that these actions were taken to achieve greater economy and efficiency within the Fire Department. The firemen, who strenuously objected to the demotions, charged that the demotions were for improper disciplinary reasons in violation of the Charter of the City and County of Denver.

After hearing before the Civil Service Commission and a C.R.C.P. 106(a)(4) review by the district court, it was held that these demotions were improper. The court affirmed the decision of the commission and ordered that the firemen be restored to their former positions. We affirm that part of the district court order which restored the demoted Captains to their former rank of Captain and reverse that part which restored the eighty-seven Firemen First Grade to their former positions as Technicians.

On October 20, 1975, the Mayor presented to the City Council his proposed 1976 budget for the City and County of Denver. The tentative Fire Department appropriation included a 6.9% increase in wages for the firemen. During 1975, the firemen's union had engaged in collective bargaining with the City over wages and terms and conditions of employment,

as permitted by Denver City Charter Chap. C, Sec. 5.80. Since no agreement on wages could be reached between the parties, the matter was submitted to binding arbitration, and a 9.5% wage increase was awarded by the arbitrators.[1]

The City made a counter-offer to the firemen of a 6.9% wage increase. No layoffs or demotions would occur if the 6.9% wage increase were to be accepted by the union. On December 11, 1975, the firemen rejected the City's offer by an overwhelming vote. The City Council then voted to increase the wages by 9.5% as provided in the arbitrators' award, and the City announced the demotions and reassignments at issue in this case.

The firefighters immediately petitioned the Civil Service Commission for a stay of execution. This relief was denied because the Civil Service Commission decided that it lacked subject matter jurisdiction to hear the case. On December 31, 1975, the firefighters brought two separate civil actions in Denver District Court, based on C.R.C.P 106(a)(4). The district court enjoined the demotions until a full hearing could be conducted before the Civil Service Commission. The City immediately commenced an original proceeding under C.A.R. 21 in this court (Supreme Court Docket No. 27082), seeking to vacate the order of the district court. On January 22, 1976, this court vacated the district court's injunctive order and issued a rule to show cause to the district court. The parties then agreed to permit the Civil Service Commission to hear the entire case on the merits.[2]

The Civil Service Commission first conducted hearings in March 1976. Soon thereafter, one of the Commissioners resigned, and a replacement was appointed. Another hearing was conducted between April 26 and May 19, 1976. On August 30, 1976, the Commission issued Findings of Fact and Conclusions which recommended that the demoted Captains and reassigned Technicians be restored to their prior positions.

Two factual findings of the Civil Service Commission have been the focus of attention in this case. First, the Commission found that "sufficient revenues would be available and had been allocated in the budgeting process to meet the 9.5% pay increase without any need for reclassification or demotion." Second, the Commission found that "the actions were taken solely for the purpose of political revenge." This second finding was

---

[1] Denver City Charter Chap. C, Sec. 5.80-7 provides that the arbitrators' award shall be binding on both the City and the firemen. The year after these events occurred, this court held that binding arbitration of public sector labor disputes is not constitutionally permissible. *Greeley Police Union v. City Council of Greeley*, 191 Colo. 419, 553 P.2d 790. This decision does not affect the outcome of the case before us.

[2] We note that the parties agreed that the Civil Service Commission had jurisdiction to initially hear the case and no reason has been presented as to why we should disagree with that determination.

partially based on the fact that, for the first time, the firemen's union had supported a political candidate who opposed the incumbent mayor in the 1975 mayoralty campaign. The Mayor was reelected to office. All but ten or twelve Denver firefighters are members of this union.

In accordance with stipulations agreed to by the parties, the City then filed a Rule 106 action in district court on September 16, 1976, to review the Commission's decision. The court issued a stay of the Commission's order pending a decision on the merits. On March 11, 1977, the court affirmed the decision of the Civil Service Commission and ordered the demoted Captains and Technicians to be returned to their former positions and that they be retroactively accorded all wages, rights of seniority, pension rights, and other emoluments of their positions. The court stayed execution of its order pending appeal to the court of appeals. We accepted certiorari before judgment on May 12, 1977, pursuant to C.A.R. 50.

## I. *DEMOTION OF THE CAPTAINS*

On December 24, 1975, the Manager of Safety issued an order demoting sixty Fire Captains to the rank of Lieutenant, effective January 1, 1976. The Captains were demoted according to the seniority system — that is, they were reduced in rank in the reverse order in which they had been appointed. The City concedes that the demotions were not for disciplinary reasons. Nonetheless, the City contends it has the power to order the demotions for nondisciplinary reasons. We do not agree with this position.

A proper analysis of these demotions requires a brief review of the Denver civil service system. The Charter of the City and County of Denver designates the ranks in the classified service of the Fire and Police Departments. Two such ranks in the Fire Department are Captain and Lieutenant. *See* Denver City Charter Chap. C, Sec. 5.45. The Charter also creates a Civil Service Commission, which is granted the power to make and enforce rules, provide for promotion, and undertake review of disciplinary actions involving the employees in the classified service. *See* Denver City Charter Chap. C, Sec. 5.54, *et seq.*

This court has previously observed that the purpose of the civil service amendments to the City Charter was "to eliminate the 'spoils system' of appointments and dismissals and make the acts of the mayor and department heads, concerning their actions in such matters, subject to the review of the career service board." *Fallon v. Nicholson,* 136 Colo. 238, 316 P.2d 1054. In furtherance of this purpose, the Civil Service Commission employs the merit system in recommending the persons to be promoted. This takes into account past performance and seniority, as well as performance on impartial competitive examinations administered by the Commission. Denver City Charter Chap. C, Secs. 5.62, 5.67. When a vacancy occurs, the Commission provides the appointing authority with three names of the most qualified applicants. Denver City Charter Chap.

C, Sec. 5.65. Once an appointment is made, it is probationary for one year. At the end of the year, if the employee has performed satisfactorily during the probationary period, the appointment becomes permanent. Denver City Charter Chap. C, Sec. 5.69. A permanent classified service employee is subject to "discharge, *reduction in grade,* fine and suspension" (emphasis added) for violating departmental rules and regulations. Denver City Charter Chap. C, Sec. 5.73. Nonetheless, this disciplinary action is reviewable by the Civil Service Commission and by the courts. Denver City Charter Chap. C, Sec. 5.73.

The City contends that it has the absolute power to demote civil service employees from rank to rank at any time if it does so to achieve greater economy and efficiency within the Fire Department.

The City points to a number of City Charter sections in support of its position. Charter provision A1.1 grants to the Mayor all executive and administrative powers given to the City by the state Constitution and the City Charter. Charter provision A1.7 specifies that the Mayor and his cabinet formulate the general administrative policies of the City. More specifically, Charter section A1.9 gives the Mayor and his cabinet the power to "make rules and regulations *for all employees* under their control, to *reduce or increase their number* from time to time as in their judgment the service may require * * * ." (Emphasis added.) In addition, Charter section C5.80-2 reserves to the City the power to control the table of organization of the Fire Department.

■ These grants of power explicitly give the City the power to reorganize the Fire Department and to even lay off employees if done in good faith. Moreover, a fireman may be demoted to a lower rank for disciplinary reasons as long as the procedures in the City Charter are followed. However, in our view, the absolute power to demote a segment of a rank of classifed employees to a lower rank for economy or budgetary reasons is *not* implicit in the grant of these other powers.

■ It is significant to note that employees holding ranks in the civil service acquire vested property interests in the ranks that they hold. *Civil Service Commission of the City and County of Denver v. District Court,* 186 Colo. 308, 527 P.2d 531. These valuable rights include "job security, seniority rights, disability and sick benefits, pension rights * * * ." *Police Pension and Relief Board v. Behnke,* 136 Colo. 288, 316 P.2d 1025. Of course, a civil service employee can be dismissed, suspended, or demoted for disciplinary reasons, but these actions must be taken according to the procedures and under explicit authority granted by the City Charter. *See Goss v. Justice of District Court of Holyoke,* 302 Mass. 148, 18 N.E.2d 546. This court has previously commented on the rights and protections afforded one holding a civil service rank under the Denver City Charter in *Bratton v. Dice,* 93 Colo. 593, 27 P.2d 1028:

"Dice, being in the classified service, had by every requirement, earned his office, first by examination, then by selection, after selection, proved satisfactory on his probationary record, and then became permanently in the service. The framers of the charter manifested an intention to protect him, as well as all other officers, against the arbitrary and capricious actions of a superior officer, and it would be a dangerous doctrine for this court to establish, and say, that the appointing officer under the civil service regulations, can at his will deprive a subordinate officer of his fixed right and property even for a moment of time, without being subject to the laws and Constitution of the land. Civil service, if it means anything, means protection in the enjoyment of earned rights thereunder, otherwise its pretensions are a mockery. * * *"

■ We are also unpersuaded by the City's argument that the Civil Service Commission rules and the collective bargaining agreement implicitly give it the power to demote firemen for nondisciplinary reasons. Rule IX, Sec. 4(h) of the Civil Service Commission provides: "* * * or if, for any cause, the number of persons holding that rank be decreased, then the last man promoted shall be returned to the rank and position held before such promotion. * * *" Moreover, this provision cannot be construed to grant a power, but merely provides for the manner of return to a rank. Similarly, although Article VI of the 1976 collective bargaining agreement reserves to the City many powers, it does not explicitly or implicitly reserve the power to demote firemen for nondisciplinary reasons.

■ Certainly, there can be no legitimate quarrel with the City's endeavor to operate its fire department in a more economical and efficient manner. However, the City does not have either the express or implied authority to demote a particular grade of firemen to a lower rank for reasons of economy and efficiency.[3] In the present case, the Fire Captains had acquired vested interests in their ranks which could only be divested in accordance with the powers and procedures specified in the City Charter. The civil service system is designed to protect its classified employees from arbitrary actions of superiors and its procedures must be respected. Certainly, the City should endeavor to operate in an efficient and economical manner. However, only proper means may be used to accomplish this commendable goal. In this case, the means used with respect to the Captains exceeded the powers accorded the City by its Charter. To accomplish what the City sought to do here would require inclusion of express authority in the Charter.

---

[3] There was testimony presented before the Commission which indicated that the Fire Department had become top-heavy with a surplus of Captains. The Chief of the Department attributed this situation to the fact that sixty Lieutenants passed the 1972 Civil Service Examination for Captains. Although the Department only needed twenty-two more Captains, the Manager of Safety insisted at that time that all those who passed the test be promoted.

## II. *REASSIGNMENT OF THE TECHNICIANS*

On December 23, 1975, the Chief of the Denver Fire Department notified eighty-seven Technicians that they were being reassigned to Firemen First Grade, effective January 1, 1976. This group consisted of: six men on airport detail; three men doing clerical work; twenty- one Assistant Chief's drivers; and fifty-seven fire truck drivers. The duties of some of these men were the same after their reassignment as before, when they were designated as Technicians. The position of Assistant Chief's driver was abolished. Apparently, unlike the Captains, the Technicians were not reassigned on a seniority basis of last-hired, first-reassigned.

The position of Technician is not a rank provided in the City Charter as part of the classified service of the Fire Department. *See* Denver City Charter Chap. C, Sec. 5.45. Technicians are provided for in the City Charter as follows:

"C5.45-5 The chief of the fire department may from time to time assign firemen 1st grade to perform the duties of technician, each of whom shall perform such duties *so long as his services are satisfactory to the chief of the fire department and the latter shall see fit to continue such assignment;* each fireman so assigned shall receive an annual salary of $10,800 for and during the time he is so assigned to perform the duties of a technician, in lieu of the annual salary for his rank as hereinbefore set forth." (Emphasis added.)

The practice of the Fire Department has been to appoint someone to the position of Technician, based on past service and performance on an intradepartmental examination. There was evidence that the position of Technician had existed for approximately ten years and that the number holding it has increased from approximately thirty in 1970 to approximately 155 in 1976.

The City Charter expressly provides that assignment to the position of Technician is for only so long as the Chief of the Fire Department "shall see fit to continue such assignment." Thus, it is *not* a civil service rank and Technicians are not promoted and demoted according to civil service rules. Rather, unlike one who holds a ranked position in the civil service, one who is assigned to the position of Technician has no reasonable expectation of holding the position permanently or of acquiring vested rights therein.

Of course, no Technician can be reassigned in bad faith. Although a Technician may be reassigned at the will of the Chief for a good reason, he cannot be reassigned for an improper reason, such as for properly exercising his First Amendment rights. The Civil Service Commission here found that: "[T]he actions were taken solely for the purpose of political revenge." The district court found direct and competent evidence supporting this finding. If, in fact, political considerations motivated the reassignments, the actions would be improper.

In reviewing this finding of the Civil Service Commission, we recognize that there is a presumption of validity supporting the official acts of public officers. *Weissman v. Board of Education of Jefferson County School District,* 190 Colo. 414, 547 P.2d 1267; *City of Colorado Springs v. District Court,* 184 Colo. 177, 519 P.2d 325. The burden is on the party challenging the reassignment to demonstrate bad faith on the part of the City. *See Chirichella v. Department of Civil Service,* 31 N.J. Super. 404, 107 A.2d 55. And, in reviewing a decision by an administrative agency under C.R.C.P. 106, the reviewing court must ascertain whether the findings of fact are supported by any competent evidence. *Bauer v. City of Wheat Ridge,* 182 Colo. 324, 513 P.2d 203; *Civil Service Commission v. Doyle,* 174 Colo. 149, 483 P.2d 380.

With these standards, burdens and presumptions in mind, we have examined the record in this case and do not find any substantial, competent evidence, direct or indirect, to support the conclusion that the real reason for the reassignments was political revenge. The evidence suggesting such a motivation was scant and consisted of the personal opinion of three witnesses, based on hearsay, rumor and innuendo. A finding of bad faith cannot rest on speculation, surmise or conjecture. On the other hand, there was overwhelming evidence demonstrating that the reassignments were made to achieve the most efficient and economical operation of the Fire Department within the 1976 budget without reducing the fire-fighting capability.[4] The firemen thus did not sustain their burden of showing bad faith on the part of the City in reassigning the Technicians.

Finally, the firemen contend that the City should not be permitted to abolish the position of Assistant Chief's driver (a Technician position) and reassign those persons to the rank of Firemen First Grade. It is well-settled, though, that as part of its power to reorganize the Fire Department the City may abolish a position and reassign the persons holding it if done in good faith. *City and County of Denver v. Norris,* 131 Colo. 259, 281 P.2d 160; *Clark v. Eaman,* 299 Mich. 78, 299 N.W. 815; *Chirichella v. Department of Civil Service,* 31 N.J. Super. 404, 107 A.2d 55. Since the Assistant Chief's driver position is not a classified rank provided for in the City Charter, the Charter need not be amended to eliminate it. Thus, in the absence of bad faith, we uphold the City's elimination of this position.

---

[4] The record reveals that the firemen's 9.5% wage increase compared favorably with the 6.9% increase received by other municipal employees in 1976. The demotions that occurred after the wage increase, moreover, were in no sense isolated to the Fire Department. The testimony established that many municipal departments had experienced similar demotions for budgetary reasons. Employees of the Public Works Department in particular were subjected to a greater number of demotions than were Fire Department employees.

144

In sum, the City has the specific authority to reassign Technicians at any time so long as it is done in good faith. Since we cannot find competent evidence to support a finding of bad faith, we reverse the district court's order invalidating the City's action.

## CONCLUSION

We find no merit in the City's contention that the Civil Service Comissioners were biased and did not accord the City a fair and impartial hearing. In addition, we find the remedies ordered by the district court with respect to the demoted Captains to be appropriate.

Thus, the judgment of the district court is affirmed in part and reversed in part, and the cause is remanded to the district court for further proceedings consonant with the views expressed herein.

MR. JUSTICE CARRIGAN concurs in part I and dissents to part II.