ANTHONY J. MARA, PLAINTIFF-RESPONDENT, v. TOWN-
SHIP OF PARSIPPANY-TROY HILLS, A MUNICIPAL
CORPORATION IN THE COUNTY OF MORRIS AND
STATE OF NEW JERSEY, JOHN P. BATCHELDER,
MUNICIPAL MANAGER OF THE TOWNSHIP OF PAR-
SIPPANY-TROY HILLS, AND HENRY AHLERS, DE-
FENDANTS-APPELLANTS.

Argued February 4, 1957—Decided April 8, 1957.

*Mr. Benjamin Franklin 3rd* argued the cause for appellants (*Messrs. Jeffers, Mountain & Franklin,* attorneys).

*Mr. Ralph Porzio* argued the cause for respondent (*Messrs. Scerbo, Porzio & Kennelly,* attorneys; *Mr. Ralph Porzio,* of counsel).

The opinion of the court was delivered by
WEINTRAUB, J.   Plaintiff, superintendent of public works of defendant municipality, filed a complaint in lieu of prerogative writ wherein he attacked the appointment of defendant Ahlers as township engineer on the thesis that the appointment invaded plaintiff's tenure under the civil service law.   Plaintiff prevailed.   On our own motion we certified defendants' appeal while it was pending before the Appellate Division.   Upon the review, defendants for the first time questioned plaintiff's status under the civil service law and we remanded the cause to the Law Division for trial of the issue thus tendered.   20 *N. J.* 274 (1955).

The trial court found for plaintiff and entered an amended judgment which is now before us.

## I.

Defendants' challenge to plaintiff's status under the civil service law has two prongs: (1) that he is the head of a department and thus in the unclassified service, *R. S.* 11:22-2, and (2) if his office or position be deemed to be within the classified service, yet he was not effectively appointed because the ordinance under which he was initially appointed provided for a three-year term and he was not reappointed after an amendment of the ordinance changed the term to an indefinite one.

## A.

On January 23, 1936, the township adopted an ordinance creating a department of public works, consisting of the full membership of the township committee to be "presided over by a chairman to be selected by the Chairman of the Township Committee." The department was given "jurisdiction over the operation of all public projects," including the municipal water works and road work. It provided for the continuation of "the various committees presently in charge of respective public works." Thus continued within the department were the water committee and the road committee, headed by members of the township committee.

Plaintiff has been with the township since its formation in 1928, holding an elective office of road supervisor for a brief portion of his total service. It may be said for present purposes that his duties have remained essentially the same throughout. The ordinance of January 23, 1936 provided for the appointment of a superintendent of public works to hold office for a period of three years, and plaintiff was duly appointed on February 19, 1936.

At the general election of November 1937, the township adopted the provisions of the civil service law and on May

8, 1938 it enacted an ordinance adopting the classification prepared for it by the Civil Service Commission, wherein the superintendent was included in the classified service with duties described as follows:

"Duties: Under administrative supervision, to have charge of and be responsible for the work involved in the extension, operation and maintenance of the water supply system, and the construction and maintenance of roads, and to perform related tasks as assigned.

Typical Tasks: Planning the work of the department of Public Works; supervising the work of employees engaged in laying water and sewer pipe, setting water hydrants, making house connections and repairing leaks; directing the work involved in the constructing and maintenance of public roads; supervising the work of employees engaged in the construction of drainage structures, digging ditches, grading, mixing and placing concrete and other construction materials; maintaining an adequate stock of supplies; supervising the maintenance and repair of road equipment; keeping records of work done; making reports."

Plaintiff performed his work in accordance with the job description. He was under the immediate supervision of the chairmen of the water and road committees. He handled routine matters on his own initiative, but undertook no major work without authorization from his superiors. He deployed and supervised a work force of 25 men at the time of the events which precipitated this suit. With respect to the hiring and discharge of subordinates, a matter which under the decisions cited below is at least a major factor in the determination of whether an office or position constitutes a head of a department, plaintiff could recommend but had no power to act finally. It is of no consequence that on some occasions when he asked for additional manpower, he was authorized to seek out and engage the men needed. He was in charge of the operations of the department, but not the head of the department within the meaning of R. S. 11:22-2.

The ordinance constituted the members of the township committee as the department of public works and continued the prior arrangement for supervision by the water and road committees. Although ordinarily the govern-

ing body is not the head of a department, *Fagen v. Morris,* 83 *N. J. L.* 3, 4 *(Sup. Ct.* 1912), affirmed 84 *N. J. L.* 759 *(E. & A.* 1913), yet members of the governing body may serve as such especially in a small community operating under a law which commits both legislative and executive functions to the governing body. It is of no moment here whether the head of the department was the full membership of the township committee or the mentioned subcommittees. The trial court's finding that plaintiff was not the head is well supported by the expert view of the Civil Service Commission and pertinent judicial authorities. *Chapman v. Edwards,* 124 *N. J. L.* 192 *(Sup. Ct.* 1940); *Walsh v. Department of Civil Service,* 32 *N. J. Super.* 39 *(App. Div.* 1954); *Connors v. City of Bayonne,* 36 *N. J. Super.* 390 *(App. Div.* 1955), certification denied, 19 *N. J.* 362 (1955); *State ex rel. Trevarthen v. City of Eveleth,* 179 *Minn.* 99, 228 *N. W.* 447 *(Sup. Ct.* 1929). The result conforms to the policy of liberal interpretation of the civil service law to further its wholesome purpose. *State Department of Civil Service v. Clark,* 15 *N. J.* 334 (1954).

B.

In disputing plaintiff's entitlement to the position, defendants do not question its *de jure* existence, but rather say that plaintiff was appointed only for a three-year term and did not acquire tenure under the statute because he was not reappointed after the ordinance was amended to change the term to an indefinite one.

The provision of the ordinance of January 23, 1936, creating the position was amended on March 14, 1938, to read:

"By majority vote of the membership of the Township Committee of the Township of Parsippany-Troy Hills, there shall be appointed and employed a superintendent to be known as the Superintendent of Public Works, *who, from January 1, 1938, shall receive an annual salary of $2,600.00, payable in semi-monthly installments.*" (Italics added.)

The italicized language constitutes the change accomplished by the amendment; it replaced the phrase "who shall hold office for a period of three (3) years" and a provision for an annual salary of $2,200. Defendants say that an alteration of the term of an office should be construed to apply only to future appointees and emphasize the words "shall be appointed and employed" in support of their view. But those words appeared in the original ordinance. It seems clear to us that the amendment was designed to change the term and salary of the incumbent, doubtless to conform to the Civil Service Commission's classification then in process and formally adopted by the township some seven weeks later. The fact that the pay increase was made retroactive to January 1, 1938, supports the conclusion that the amendment was intended to relate to the existing holder of the post.

This view is furthered by the treatment thereafter accorded plaintiff over a span of some 18 years. He was carried on the records for civil service purposes as the holder of the classified position. He received 11 increases in pay. It is too late to assert the need for proof of a formal reappointment. *Rogers v. Department of Civil Service,* 17 *N. J.* 533, 537 (1955); *cf. Barkus v. Sadloch,* 20 *N. J.* 551 (1956). Hence we need not consider plaintiff's further contention that his status is assured by *chapter* 278 of the *Laws of* 1951 (*N. J. S. A.* 11:21–5.2) and *chapter* 234 of the *Laws of* 1941 (*N. J. S. A.* 58:11–18.7).

## II.

On July 1, 1954, there became effective in the township Council-Manager Plan A adopted pursuant to the Optional Municipal Charter Law (*N. J. S. A.* 40:69A–1 *et seq.*). Plaintiff's tenure under the civil service law was preserved by *N. J. S. A.* 40:69A–207.

The question, accordingly, is whether the appointment of the township engineer with the duties specified for him by the municipal manager impinged upon plaintiff's rights

under the civil service law. The organizational ordinance created the office of township engineer and provided that he

"shall perform such duties as are prescribed by general law and as may hereafter be prescribed by the Council. In lieu of appointing an individual, the Manager may appoint a firm of engineers each member of which shall be a licensed Civil Engineer of the State of New Jersey."

Purporting to act thereunder, the municipal manager reported his appointment of Ahlers, who for some years had served as township engineer, stating:

"The position of Township Engineer carries with it a full time responsibility for the complete over-all supervision and planning of all street, road and water department projects. It is not expected that this will be an operation of so many hours per day or week; rather that the responsibility will be so allocated that the Engineer will be responsible to the Manager for all phases of public works operations and that the Superintendent of Public Works *and all other employees of that department will be under the immediate and direct supervision of and responsible to the Township Engineer.*" (Italics added.)

The municipal manager testified that he did not intend thereby to interfere with the chain of command between plaintiff and subordinate employees, but the italicized portion quoted above does depart from the concept; and plaintiff's testimony indicates that the township engineer in fact took part of the work force and himself directed them on a road project, resulting in understandable confusion among the men as to who was their immediate superior. As superintendent, plaintiff is entitled to the direct and immediate supervision of the employees of the public works department in the execution of both the routine work and such projects as may be authorized by his superiors, and to the extent that the township engineer was purportedly empowered to by-pass plaintiff, his complaint is well founded. *Edelstein v. City of Asbury Park,* 12 *N. J. Super.* 509 (*App. Div.* 1951).

But plaintiff goes further and contends he is entitled to report directly to the municipal manager and that no

one other than a deputy manager may intervene between them. This proposition is untenable. The statute broadly empowers the municipal council to create "such executive and administrative departments, boards and offices, in addition to those provided for herein, as it may deem necessary for the proper and efficient conduct of the affairs of the municipality." *N. J. S. A.* 40:69A–90. The cited section authorizes the creation of the office of deputy manager, but nothing in the act suggests that a department may be headed only by the manager or his deputy. On the contrary, *N. J. S. A.* 40:69A–95 provides that the municipal manager shall

"(c) appoint and remove a deputy manager if one be authorized by the council, *all department heads* and all other officers, subordinates, and assistants for whose selection or removal no other method is provided in this article, except that he may authorize *the head of a department* to appoint and remove subordinates in such department, supervise and control his appointees, and report all appointments or removals at the next meeting thereafter of the municipal council." (Italics added.)

Thus the statute expressly recognizes authority in the council to provide for "department heads" who need not be the deputy manager. The reason is plain enough, for a contrary approach might impair efficiency in local government.

The difficulty we find is not with respect to the existence of power to provide for a head of the department of public works; rather it lies in the circumstance that the council did not create that office or assign the township engineer to it. The ordinance provided for a township engineer, presumably to render the usual engineering services. In fact, a firm of engineers could be appointed. The authority to create offices and to "determine and define the powers and duties" thereof is vested in the council. *N. J. S. A.* 40:69A–90. Pursuant thereto, the ordinance provided that the township engineer "shall perform such duties as are prescribed by general law and as may hereafter be prescribed by the Council." It was beyond the authority of the municipal manager to invest the office

of township engineer with the duties of the head of the department of public works.

Accordingly, we agree with the portion of the judgment which provides that plaintiff "shall be under the direct supervision of the defendant, Municipal Manager," insofar as it adjudges the existing situation, but the power of the council to provide for a head of the department of public works to perform the duties of that office within the concept of chain of command, cannot be denied.

As thus clarified, the judgment is affirmed, with costs in favor of plaintiff.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and WEINTRAUB—6.

*For reversal*—None.