THE CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT, v. DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY AND ANTONE S. DeMOURA, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 24, 1961—Decided July 3, 1961.

418

Before Judges GOLDMANN, FOLEY and LEWIS.

*Mr. Thomas M. Kane* argued the cause for the appellant (*Mr. Vincent P. Torppey,* Corporation Counsel, attorney).

*Mr. Martin S. Fox* argued the cause for the respondent, Antone S. DeMoura (*Mr. David I Fox,* on the brief).

The opinion of the court was delivered by
LEWIS, J. A. D.   Respondent, Antone S. DeMoura, was appointed as an Electrical Inspector in the Department of Health and Welfare, City of Newark, on March 17, 1957. This position is in the classified division of Civil Service.

On October 30, 1959 DeMoura pleaded *nolo contendere* to an indictment, filed in the office of the Clerk of the United States District Court for the District of New Jersey, charging him with evasion of income taxes for the years 1952 and 1953 in violation of the *Internal Revenue Code, 26 U. S. C., Section* 145 (b). Respondent was placed on probation, and ordered to pay a fine of $1,500. On October 27, 1959 he was suspended from his employment, by the Director of the Department of Health and Welfare, pending a hearing on charges that he violated Civil Service Rule 59(k) and (m) which provides for the discretionary removal of employees for:

"(k) The commitment of any criminal act;" and
"(m) Conviction of a criminal offense or of a misdemeanor involving moral turpitude."

After a hearing before the Director, on November 23, 1959, a final notice of disciplinary action was filed, dated December 10, 1959, declaring respondent guilty of the charges (violation of Civil Service Rule 59), and removing him from his position of Electrical Inspector, effective October 27, 1959. DeMoura initiated an appeal, on December 23, 1959, to the Civil Service Commission. That administrative tribunal, on March 14, 1960, after due notice, heard the case and found as a matter of fact that DeMoura was guilty of violating Civil Service Rule 59, sections (k) and (m), and further decided that:

"* * * while such 'violations may be used as grounds for suspension or removal, they are not self-executing or obligatory upon the appointing authority. In the present case, we believe the penalty of removal from a permanent position for a Civil Service employee for income tax evasion was too severe since the Federal Court did not impose a jail sentence but, instead, placed appellant on probation for three and one half years."

The order of the Commission was issued on June 13, 1960. Its effect was to reverse the penalty of removal imposed by

the Director and to substitute an order of suspension, without pay, for a period of six months from the original suspension date of October 27, 1959.

An appeal from that determination is now before this court. The City of Newark contends, in substance, that: (1) the Civil Service Commission was not justified in reducing the penalty as provided in its order; and (2) De-Moura, by virtue of *R. S.* 40:69A–166, forfeited his employment upon his conviction of the federal offense of income tax evasion.

The applicabiilty of *N. J. S. A.* 40:69A–166 was not raised below. This new issue of law was projected by appellant in its brief filed with this court in the appellate proceedings. This *section* 166 reads:

"Any person convicted of a crime or offense involving moral turpitude shall be ineligible to assume any municipal office, position or employment in a municipality governed pursuant to this act, and upon conviction thereof while in office shall forfeit his office. Any person who shall violate any of the provisions of sections 17–14, 17–15 or 17–16 of this article shall upon conviction thereof in a court of competent jurisdiction forfeit his office."

The specific sections incorporated by reference are to be found in *N. J. S. A.* 40:69A–163, 164 and 165 and provide for the forfeiture of positions by those officers and employees having an interest in contracts or jobs with a municipality; accepting any franks, free passes, tickets or service from public utilities and transportation companies (with certain enumerated exceptions); giving promises of office, position, employment or benefits; or being convicted of any crime involving moral turpitude; and provide for the discretionary removal of one failing to appear or testify before a court, legislative committee or the Governor.

It will be readily noted from the foregoing that the conviction of a crime involving moral turpitude under the Faulkner Act (*section* 166) carries with it a mandatory forfeiture of employment; while, on the other hand, under

Civil Service Rule 59 such a conviction is a sufficient cause for removal or forfeiture but the stated penalty is not a mandate.

On motion of the respondent, Department of Civil Service, we remanded the matter to the Civil Service Commission to consider the effect of this cited statutory *section* 166 upon the merits of the case. The Commission, on or about January 24, 1961, in response to the remand, rendered a supplemental decision acknowledging the controlling relevance of *section* 166, and concluded:

"Therefore, the Civil Service Commission believes that Respondent DeMoura did in effect forfeit his employment upon his conviction in Federal Court, but whether this agency is the proper one to rule on it is a matter for the Superior Court to decide. In any event, the Civil Service Commission clearly believes that *R. S.* 40:69A–166 is applicable and, therefore, we had no authority to lessen the penalty and the decision of a six months' suspension is set aside. We concede that Respondent DeMoura is out of office under the automatic forfeiture provision, but is not being removed under operation of Title 11."

The original suspension of DeMoura in October 1959, his subsequent hearing in November (resulting in dismissal from office), and his trial before the Civil Service Commission on March 14, 1960 were all predicated upon the fact that DeMoura was charged with violating Civil Service Rule 59 (k) and (m) and the assumption that he was entitled to have his case reviewed and ultimately determined by the Civil Service Commission pursuant to its applicable laws and rules.

*Title* 11 (*N. J. S. A.* 11:1–1, *et seq.*) embodies the Civil Service Act. In the statute itself, there is no specific provision for penalties or sanctions upon conviction of a crime involving moral turpitude; *N. J. S. A.* 11:5–1, however, accords to the Commission the power to promulgate rules and regulations in order to effectuate the administration of the act. Pursuant to this delegated power, Rule 59 was adopted setting forth specific causes, including (k) and (m)

quoted *supra,* which "shall be sufficient for removal" of any employee holding a position in the classified service.

The City of Newark is governed by the provisions of the Optional Municipal Charter Law, *L.* 1950, *c.* 210, *N. J. S. A.* 40:69A–1 *et seq.,* commonly referred to as the "Faulkner Act." It has been so governed since July 1, 1954, the effective date fixed by a successful referendum the previous November.

It is quite understandable that respondent DeMoura, under the circumstances, should advocate the jurisdiction of Civil Service. He maintains: that (1) *N. J. S. A.* 40:69A–166 is inapplicable to any municipality "operating under the provisions of Title 11 (Civil Service) of the Revised Statutes," and the right of the Civil Service Commission to modify penalties in disciplinary proceedings survives a municipal adoption of the Faulkner Act; and (2) said *section* 166 is inapplicable to him since he is not a public officer.

I.

Specifically, it is argued that *N. J. S. A.* 40:69A–207 renders *N. J. S. A.* 40:69A–166 inapplicable to municipalities operating under the provisions of *Title* 11 (Civil Service) of the *Revised Statutes. Section* 207 may be characterized as a saving clause. It is entitled "Existing offices abolished on effective date of optional plan; exceptions," and is under the group heading "H. SUCCESSION IN GOVERN-MENT." We quote verbatim the portion of this section material to the case *sub judice:*

"\* \* \* If the municipality is operating under the provisions of Title 11 of the Revised Statutes (Civil Service) at the time of the adoption of an optional plan under this act, nothing herein contained shall affect the tenure of office of any person holding any position or office coming within the provisions of said Title 11 as it applies to said officers and employees. If the municipal clerk has, prior to the effective date of the optional plan, acquired a protected tenure of office pursuant to law, he shall become the first municipal clerk under the optional plan."

The apparent conflict presents another situation where— "The problem presented is purely one of statutory construction and mutual accommodation of legislative purposes and objects." *Myers v. Cedar Grove Township,* 66 *N. J. Super.* 530, 535 (*App. Div.* 1961). The legislative purpose and the objective in including this transitional provision in the statute clearly was to protect the civil service rights of municipal employees upon a change-over in government, incident to an optional plan adoption under the Faulkner Act. Note *N. J. S. A.* 40:69A–26.

█ █ The Civil Service law was enacted to secure tenure during good behavior for those employees who come within its scope, *Handlon v. Town of Belleville,* 4 *N. J.* 99, 109 (1950), and to give protection against dismissal and other types of discrimination to those holding positions which the Legislature placed in the classified service, *Young v. Civil Service Commission,* 127 *N. J. L.* 329, 331 (*Sup. Ct.* 1941); *Scancarella v. Department of Civil Service,* 24 *N. J. Super.* 65 (*App. Div.* 1952). Its primary function is to secure "efficient public service" in the affairs of government. The summation of Chief Justice Vanderbilt in *Borough of Park Ridge v. Salimone,* 21 *N. J.* 28 (1956), expresses the legal principles that should be borne in mind as we relate our Civil Service law to the Faulkner Act. He said, at *page 44:*

"* * * The welfare of the people as a whole, and not specifically or exclusively the welfare of the civil servant, is the basic policy underlying the law; *Sullivan v. Roe,* 18 *N. J.* 156, 162 (1955); *State Dept. of Civil Service v. Clark,* 15 *N. J.* 334 (1954); *Sullivan v. McOsker,* 84 *N. J. L.* 380, 385 (*E. & A.* 1913); *Walsh v. Department of Civil Service,* 32 *N. J. Super.* 39 (*App. Div.* 1954); *R. S.* 11:4–1; *Martini v. Civil Service Commission,* 129 *N. J. L.* 599, 602, 603 (*Sup. Ct.* 1943); and to effectuate that policy it has long been recognized that the statutes must be liberally construed; *Sullivan v. McOsker, supra; Walsh v. Department of Civil Service, supra; City of East Orange v. Civil Service Commission,* 132 *N. J. L.* 181 (*Sup. Ct.* 1944); *City of Newark v. Civil Service Commission,* 115 *N. J. L.* 26 (*Sup. Ct.* 1935). But a liberal policy of construction is still no license to disregard the clear meaning of the law as to the basic purpose

sought to be accomplished by the statutes, and any doubt on this score must be resolved in favor of the express provisions of the statutes; *Tanis v. Passaic County*, 126 *N. J. L.* 303 (*E. & A.* 1941); *Maguire v. Van Meter*, 121 *N. J. L.* 150 (*E. & A.* 1938); *City of Newark v. Civil Service Commission, supra.*"

It was the intendment of the Faulkner Act to confer the greatest possible power of local self-government, consistent with the New Jersey Constitution, upon municipalities adopting a plan pursuant to the act, as well as, to reduce the vast number of types of local government with all their varying rules and regulations, by providing a flexible general pattern adaptable to the various communities and their needs. It provides a studied program for municipal government. See *Second Report of the New Jersey Commission on Municipal Government.* The transmittal letter, with this report, to the Governor, dated February 20, 1950, included the statement: "It is, in short, a declaration and charter of self government for New Jersey communities, designed to release local initiative and energy being held in check by State-imposed restrictions." Liberal construction is to be given in favor of municipal corporations formed for local government. 1947 *Constitution, Art.* IV, *Sec.* VII, *par.* 11. See, also, *N. J. S. A.* 40:69A–30.

The several provisions of *N. J. S. A.* 40:69A–163 through 167 (encompassing *sections* 17–14 through 17–18 of *chapter* 210 of the *Laws of* 1950) are safeguards for the public. *Section* 166 also provides that persons convicted of violating *N. J. S. A.* 40:69A–163, 164 or 165 are subject to mandatory forfeiture. There is nothing specific in Rule 59 or any other Civil Service rule which states that an employee may be removed for the grounds mentioned in *sections* 163, 164 and 165. Hence, to effectuate the objects of the forfeiture provisions in the Faulkner Act, it is necessary to interpret them as applying to employees within *Title* 11 as well as others. It must be remembered that the object of the forfeiture provisions was to protect the public —not to protect employees. The argument that *section* 207

was intended to exclude *Title* 11 employees from the forfeiture provisions of the Faulkner Act because an elaborate plan already existed for the removal and discipline of *Title* 11 employees is without merit. Nor is it consonant with the beneficial objects of the forfeiture provisions in the Faulkner Act.

The necessary result of respondent's argument would relegate the applicability of those protective provisions to non-civil service municipalities adopting the Faulkner Act. If the Legislature intended to accomplish such a limited result, it is only logical to assume, it would have so provided in a direct manner, without relying upon mere inference from the broad and general provisions of the transitional section of the act. The legislative policy to deal directly and specifically with the question of exemption is evidenced by the Optional Key Positions Law, which contains stated exemptions with relation to *Title* 11 employees. (*L.* 1950, *c.* 211; *N. J. S. A.* 40:46–39, *et seq.;* exemptions, *N. J. S. A.* 40:46–50). This legislation was recommended as Part 3 of the *Second Report of the New Jersey Commission on Municipal Government,* and was one of the companion bills considered and adopted by the Legislature when the Faulkner Act became law. Thus, it is evident that the draftsmen of the Faulkner Act knew that there were conflicts between the Faulkner Act, related legislation and *Title* 11. It would have been easy to insert a similar provision exempting *Title* 11 employees from the forfeiture provisions of the Faulkner Act if the Legislature had intended such an exemption. Ordinarily exemptions are allowed only where the right is clear and unequivocal. Compare, *Consumers' Research, Inc., v. Evans,* 128 *N. J. L.* 95, 98 (*Sup. Ct.* 1942), affirmed 132 *N. J. L.* 431 (*E. & A.* 1944).

██ The creation of statutory offenses, and provision for penalties for violation thereof, do not impair or diminish in any way Civil Service tenure rights but, to the contrary, implement our substantive laws for the betterment of government and for the protection of the rights of citizenry.

The fact that the Faulkner Act ordains penalties of greater severity than those prescribed by the rules of Civil Service should admit of no doubt that the agency rules must yield to the legislative command. The Legislature is not precluded by Civil Service laws from establishing reasonable standards of conduct for those operating within local, as well as state, government, nor from imposing penalties or sanctions for violation of pronounced standards. Moreover, the Faulkner Act was adopted by the City of Newark subsequent to the Civil Service legislation. "Statutes *in pari materia,* although in apparent conflict, are so far as reasonably possible construed to be in harmony with each other. But if there is an irreconcilable conflict between the new provisions and the prior statutes relating to the same subject matter, the former will control as it is the later expression of the legislature." 2 *Sutherland, Statutory Construction* (3d ed. 1943), sec. 5201, *p.* 531; *Two Guys from Harrison, Inc., v. Furman,* 32 *N. J.* 199, 225 (1960); *State Board of Health v. Borough of Vineland,* 72 *N. J. Eq.* 289 *(Ch.* 1906), affirmed 72 *N. J. Eq.* 862 *(E. & A.* 1907); *Vroom v. Board of Education,* 79 *N. J. L.* 46, 47 *(Sup. Ct.* 1909).

█ █ It should be noted that *Title* 11 (Civil Service) does not embrace elected officers, *N. J. S. A.* 11:22–2(a), whereas *sections* 163 through 167 of *N. J. S. A.* 40:69A clearly deal with such officers as well as employees and persons holding positions. If we accede to the contentions advanced by respondent that *section* 207 precludes the application of *section* 166 to Civil Service municipalities, we would have a situation where elected officers in communities which have adopted the Faulkner Act are neither subject to the disciplinary and removal sections of *Title* 11 nor the forfeiture provisions of the Faulkner Act. This would be an intolerable result that the Legislature assuredly did not intend. There is no logical or apparent legislative reason why an officer, position holder or employee in a Civil Service community governed by the Faulkner Act should not be

subject to forfeiture of his municipal post if convicted of a crime involving moral turpitude. We are concerned with the internal sense of the law. *Wollen v. Borough of Fort Lee,* 27 *N. J.* 408 (1958). The intent of the lawgivers and the spirit of their legislation must prevail. *Giordano v. City Commission of City of Newark,* 2 *N. J.* 585, 594 (1949); *Sperry and Hutchinson Co. v. Margetts,* 15 *N. J.* 203 (1954). "As between two possible constructions of a statute, the one which most closely effectuates legislative policy must control." *Borough of Park Ridge v. Salimone, supra,* 21 *N. J.,* at *page* 49.

Finally, DeMoura maintains that a decision that *section* 207 does not prevent *section* 166 from applying to him would, in effect, repeal by implication a number of statutory safeguards established in *Title* 11. This argument is fallacious. The safeguards provided in *Title* 11 only protect civil service employees from the arbitrary action of the appointing authority and the Civil Service Commission. They do not safeguard an employee from future legislative action which may change his rights. By providing mandatory forfeiture of employment in certain specified cases, the Legislature has not impliedly repealed any portions of *Title* 11. Employees are still protected from arbitrary action by the appointing authority and the Commission. What the Legislature has done is to add to *Title* 11 provisions for forfeiture in those instances where a community decides to avail itself of the provisions of the Faulkner Act. There has been no implied repeal.

We hold that *N. J. S. A.* 40:69A–166 is applicable to all municipalities adopting the Faulkner Act. To hold otherwise would only subvert an important fundament of our municipal laws and defeat the sound objectives of the Faulkner Act.

## II.

Although *section* 166 states that any person convicted of an offense involving moral turpitude shall be "* * *

ineligible to assume any municipal office, position or employment * * *," it further states "* * * and upon conviction thereof while in office shall forfeit his office." Respondent argues that, since the portion of the statute dealing with forfeiture is concerned only with "office," it is obvious the Legislature did not intend that the forfeiture provision should apply to holders of "position" or "employment." He considers *section* 166 inapplicable because he is not a public officer. Our attention is directed to *Kovalycsik v. City of Garfield,* 58 *N. J. Super.* 229, 236 (*App. Div.* 1959), wherein this court recognized and discussed a distinction between office, position and employment. It was there pointed out that:

"The criteria for determining the technical status of a public post set forth in *Fredericks v. Board of Health,* 82 *N. J. L.* 200, 201–202 (*Sup. Ct.* 1912), have been frequently resorted to in the cases. See, *e. g., Serritella, supra* [*Serritella v. Water Commission, etc., of Garfield*] (128 *N. J. L.* [259] at *page* 261) ; *Barkus, supra* [*Barkus v. Sadloch*] (20 *N. J.* [551] at *page* 554) ; *Thorp v. Board of Trustees of Schools for Industrial Ed.,* 6 *N. J.* 498, 506–507 (1950) ; *Board of Chosen Freeholders of Hudson Co. v. Brenner,* 25 *N. J. Super.* 557, 559, 563 (*App. Div.* 1953), affirmed o. b. 13 *N. J.* 288 (1954). According to those precepts, an 'office' presupposes employment which is governmental in character and duties certain and permanent; in a position the duties, while certain and permanent, may or may not be governmental (and are not assigned to it by any public law of this State) ; and in an employment, the duties are neither certain, permanent, nor governmental."

We also observe, however, that in this case the court, after declaring that a municipal office or position may be created by ordinance, and citing the Home Rule Act and supporting authorities, 58 *N. J. Super.,* at *page* 233 remarked: "In this context the terms 'position' and 'office' are used interchangeably." See, *Jersey City v. Department of Civil Service,* 57 *N. J. Super.* 13, 28 (*App. Div.* 1959).

When a word or expression has both a recognized common meaning and a technical meaning, in absence of a contrary legislative intent, the term is presumed to be used

in its common sense. 2 *Sutherland, supra, sec.* 4919, *p.* 441. The word "office," as indicated in *Webster's New International Dictionary* (*2d ed.* 1961), is of old French origin. The Latin word *officium* is probably derived from *opus* meaning "work," plus *facere* meaning "to do." The first definition of the word "office," according to *Webster,* is: "That which a person does for, or with reference to, another or others; a service." In a law review article captioned "A New Jersey Municipal Law Mystery—What is a Public Office?," our judicial decisions on this subject are analyzed and discussed at length. 6 *Rutgers L. Rev.* 503 (1952). The author makes this comment:

"* * * in many of the situations in which the differentiation between 'offices,' 'positions' and 'employments' is treated as supposedly having social-legal usefulness, it actually has only an empty formalistic function which obscures real legal utility and real legal value."

The three-divisional expression "office, position or employment" is an all-inclusive term and the subsequent use, in the same sentence, of the words "while in office" and "his office" obviously connote a reference to the descriptive terminology employed by the Legislature. The word "office" as thus used is not a word of art, with limited application, but indicates the post of any member of the named classes who has commenced functioning at his designated level. Further credence is given to this interpretation when the structure of this section is analyzed. It contains two sentences. They each begin with the words "Any person," and contain the words "his office." There is only one antecedent to which the singular possessive adjective "his" can correctly refer, and that is "any person," which would include any member of the three classes—office, position or employment. If this were not so, and the words "his office" as used in the second sentence did not comprehend positions or employment, there would be no penalty under the Faulkner Act for violations, by position holders

or employees, of the offenses contemplated by the statutory sections incorporated by reference in this sentence. *Section* 207 provides that "* * * nothing herein contained shall affect the tenure of office of any *person* holding any *position* or *office* coming within the provisions of said Title 11 as it applies to said officers and *employees.* * * *" (Emphasis added.) It is evident from this language that an employee may have "tenure of office," and that the term "office" includes "employment." Otherwise, only officers, not employees, would be protected under the Civil Service saving clause of the Faulkner Act.

Furthermore, the last sentence of *section* 166 provides that any person who shall violate any of the provisions of *sections* 163, 164 and 165 shall upon conviction thereof in a court of competent jurisdiction forfeit his *office.* If the word "office" as used in section 166 does not encompass employment, there would be no penalty in the Faulkner Act for employees who violate *sections* 163 and 164. Both of these sections begin: "No officer or employee * * *." The only penalty for their violation is that found in *section* 166.

It does not seem plausible that the Legislature intended that the conviction of a crime, involving moral turpitude, would render one ineligible for *office, position or employment,* but that such a conviction after employment would not operate as to all three municipal posts. The idea of fragmenting the application of the Faulkner Act is out of harmony with the declared legislative policy.

We conclude that *N. J. S. A.* 40:69A–166 provides a statutory penalty for anyone within its scope who is convicted of a crime involving moral turpitude; and, that the word "office" as used in *section* 166 of the Faulkner Act includes municipal office holders, position appointees and employees, and is applicable to respondent, DeMoura. It, accordingly, is not necessary to determine his job status. However, we observe, in passing, that a duly appointed Electrical Inspector may be charged with duties and re-

sponsibilities that contribute to the operation of local government. Compare the following cases, which have given recognition to the existence of an "office" where certain types of subordinate employment were involved. *Pellegrino v. Evans*, 133 *N. J. L.* 159 (*Sup. Ct.* 1945) (building inspector); *Duncan v. Board of Fire, etc., Commissioners*, 131 *N. J. L.* 443 (*Sup. Ct.* 1944) (police patrolman); *Brodman v. Rade*, 101 *N. J. L.* 207 (*E. & A.* 1924) (secretary, Board of Health); *Volk v. Burk*, 83 *N. J. L.* 204 (*Sup. Ct.* 1912) (chief clerk, Board of Commissioners of Assessment of Taxes); *Fredericks v. Board of Health*, 82 *N. J. L.* 200 (*Sup. Ct.* 1912) (sanitary inspector).

## III.

The supplemental decision of the Civil Service Commission concluded with the statement:

"We concede that Respondent DeMoura is out of office under the automatic forfeiture provision, but is not being removed under operation of Title 11."

This court is not in accord with the theory that *N. J. S. A.* 40:69A–166 is a self-executing automatic forfeiture provision. Whether the cause of forfeiture has arisen is a question to be determined "upon the application of legal rules to facts to be ascertained and settled in the due course of proceeding, in the presence of the officer to be affected." *Clark v. Ennis*, 45 *N. J. L.* 69, 72 (*Sup. Ct.* 1883). This case is distinguishable from *Mulsoff v. Sloat*, 8 *N. J. Misc.* 554 (*Sup. Ct.* 1930), where the statute provided for the forfeiture of office upon conviction or plea of *non vult* or *nolo contendere* and continued with the specific language— "and cease to hold the same from the date of such conviction or entry of such plea as aforesaid." *Cf. Walter v. Police & Fire, etc., Trenton*, 120 *N. J. L.* 39 (*Sup. Ct.* 1938).

Notice is taken of *Berardi v. Rutter,* 42 *N. J. Super.* 39 (*App. Div.* 1956), affirmed *In re Berardi,* 23 *N. J.* 485 (1957). In that case, the plaintiff, a detective, appealed from a judgment revoking his license. The appellant had entered a plea of *nolo contendere* to an information returned in the United States District Court for the District of New Jersey charging him with a violation of 26 *U. S. C. A.* § 3616(a) (income tax evasion). This court (42 *N. J. Super.,* at *page* 48) observed:

"* * * where an intent to defraud constitutes an essential element of an offense, the offense surely involves moral turpitude. *Jordan v. De George,* 341 *U. S.* 223, 232, 71 *S. Ct.* 703, 95 *L. Ed.* 886, 893 (1950), *Annotation,* 95 *L. Ed.* 899, 907; *Louisiana State Bar Assn. v. Steiner,* 204 *La.* 1073, 16 *So. 2d* 843 (*Sup. Ct.* 1944); *cf. In re Hallinan,* 43 *Cal. 2d* 243, 272 *P. 2d* 768 (*Sup. Ct.* 1954). Here the offense involves moral turpitude since an intent to evade an assessment—that is, to defraud the government—constitutes an essential element. 26 *U. S. C. A.* § 3616(a)."

and found that a conviction for falsifying a federal income tax return with an intent to evade the tax, though based on a plea of *nolo contendere,* constituted cause for revocation of his private detective license. Our Supreme Court, in its affirming opinion (23 *N. J.,* at *page* 494), discussed the plea of *nolo contendere* and said: "The weight to be given to it rests in the judgment of the administrative officer charged with the duty of enforcing the statute." There are different views as to what constitutes moral turpitude. Annotation, 59 *A. L. R.* (2d), *Disbarment—Income Tax Conviction, p.* 1401.

It is mandatory under the Faulkner Act that respondent DeMoura, occupying the municipal post of Electrical Inspector, shall "forfeit his office" upon conviction of a crime or offense involving moral turpitude. Having pleaded *nolo contendere* to an indictment for income tax evasion, he was subject to being removed from office upon the proper adjudication that he had been convicted of a crime involving moral turpitude. Such a determination, on an administrative level,

would involve the exercise of a *quasi*-judicial function. *State v. Board of Chosen Freeholders of County of Passaic,* 60 *N. J. L.* 392 (*Sup. Ct.* 1897). DeMoura is entitled to the essential of judicial action, including notice, and an opportunity to be heard. *Hyman v. Muller,* 1 *N. J.* 124, 129 (1948); *Jersey City v. Dept. of Civil Service, supra;* 16A *C. J. S. Constitutional Law* § 611, *p.* 743; 4 *McQuillin, Municipal Corporations, Elections, Officers and Employees, sec.* 12.255, *p.* 328 (*3d ed.* 1949). He is entitled to a "reasonable opportunity to know the claims of the opposing party, and to meet them," *Morgan v. United States,* 304 *U. S.* 1, 58 *S. Ct.* 773, 776, 999, 82 *L. Ed.* 1129 (1938), and has the right to a hearing before the appropriate administrative agency to determine if the crime or offense for which he was convicted, upon a plea of *nolo contendere,* involved moral turpitude.

### CONCLUSION.

DeMoura has never been charged with violating *N. J. S. A.* 40:69A–166. The judgments against him under the Civil Service laws and rules were *coram non judice.*

This matter is accordingly reversed and remanded for appropriate proceedings before the local appointing authority pursuant to the provisions of the Faulkner Act.