74 N.J. Super. 159 (1962)
180 A.2d 721
ALFRED J. LOBODA, EUGENE J. SCHILLER, MURIEL E. NADLER AND JOSEPH J. SMITH, PLAINTIFFS,
v.
TOWNSHIP OF CLARK, A MUNICIPAL CORPORATION OF UNION COUNTY, NEW JERSEY, WILLIAM J. MAGUIRE, JOHN DOENZELMANN, KARL KUMMER AND NORMA B. DAVENPORT, DEPARTMENT OF CIVIL SERVICE AND CIVIL SERVICE COMMISSION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 4, 1962.
*162 Mr. Charles Rubenstein for plaintiffs (Messrs. Rubenstein & Glick, attorneys).
Mr. Irvine B. Johnstone, Jr., for defendants Township of Clark and William J. Maguire (Messrs. Dughi & Johnstone, attorneys).
Mr. William Miller for defendants John Doenzelmann, Karl Kummer and Norma B. Davenport.
Mr. William L. Boyan, Deputy Attorney General, appeared for the defendants Department of Civil Service and Civil Service Commission (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
FELLER, J.S.C.
This is an action in lieu of prerogative writs. An amended complaint and amended answer have been filed. Several motions and counter-motions have been made, and oral arguments have been heard on various dates. *163 The several questions can be disposed of in the determinations of the plaintiffs' motion for summary judgment and the defendants' cross-motion for summary judgment. The allegations of the fourth and fifth counts of the amended complaint in effect have been disposed of in the case of Crook v. Township of Clark and Joseph Smith et al., 74 N.J. Super. 148 (Law Div. 1962), which decision recently rendered and the issues raised in these two counts are now moot.
At the general election on November 3, 1959 the voters of the Township of Clark adopted Plan F of the Optional Municipal Charter Law, hereafter referred to as the Faulkner Act. On that date the Township of Clark was not operating under Title 11 of the Revised Statutes, hereafter referred to as the Civil Service Act.
Pursuant to the provisions of the Faulkner Act the first election of officers (mayor and council) was held at the general election on November 8, 1960. On that date also the voters of the Township of Clark adopted the provisions of the Civil Service Act.
Prior to January 1, 1961 the Township of Clark was operating under the commission form of government, but on that date the township commenced operating under the Faulkner Act in accordance with the referendum of November 3, 1959 and the mayor and council took office, having been elected on the said November 8, 1960. Thus, January 1, 1961 became the effective date of the Optional Plan F form of government for the Township of Clark.
On June 27, 1961 Joseph J. Smith, Director of the Department of Public Works and Engineering, appointed plaintiff Alfred J. Loboda building inspector, effective June 30, 1961, for a term ending December 31, 1964. On said date defendant John Doenzelmann was performing the duties of said office, and had been doing so continuously since his appointment on or about April 3, 1951, and thus he was employed for more than one year prior to August 22, 1960, which was the date that the petition for the adoption *164 of Civil Service was filed. The said defendant Doenzelmann refused to vacate the office and claimed the tenure protection of N.J.S.A. 11:21-5.2 and N.J.S.A. 11:21-6 because of the adoption of the Civil Service Act on November 8, 1960.
On said date, June 27, 1961, Joseph J. Smith also appointed plaintiff Eugene J. Schiller plumbing inspector, effective June 30, 1961, for a term ending December 31, 1964. On said date defendant Karl Kummer was performing the duties of said office and had been doing so continuously since his appointment on or about May 20, 1952, and thus was employed for more than one year prior to August 22, 1960, which was the date that the petition for the adoption of Civil Service was filed. The said defendant Kummer refuses to vacate the post and also claims the tenure protection of N.J.S.A. 11:21-5.2 and N.J.S.A. 11:21-6, also because of the adoption of the Civil Service Act on November 8, 1960.
On the same date, namely, June 27, 1961, the said Joseph J. Smith also appointed plaintiff Muriel E. Nadler clerk in the Department of Public Works and Engineering, effective July 3, 1961, for a term ending December 31, 1964. On said date defendant Norma B. Davenport was performing the duties as said clerk and had been doing so continuously since May 16, 1960. This defendant commenced work as record clerk in the township on June 8, 1953, and on May 20, 1954 she was appointed deputy township clerk and on May 22, 1958 was appointed principal clerk. Thus, this defendant was also employed by the township for more than one year prior to August 22, 1960, which was the date the petition for adoption of Civil Service was filed. This defendant also refuses to vacate the post and claims tenure protection of N.J.S.A. 11:21-5.2 and N.J.S.A. 11:21-6 because of the adoption of the Civil Service Act on November 8, 1960.
Plaintiffs contend that under the provisions of the Faulkner Act (N.J.S.A. 40:69A-207) which became effective *165 in the Township of Clark on January 1, 1961, vacancies occurred in the above three posts on said date and the terms of office and rights thereto of defendants were terminated by operation of law on said January 1, 1961, since defendants were not appointed on or after January 1, 1961. Plaintiffs further contend that they were duly appointed on June 27, 1961 and are entitled to assume the duties of said offices. The defendants refuse to vacate these posts and contend that they had been performing their duties for more than one year prior to August 22, 1960, which was the date that the petition was filed for the adoption of Civil Service in Clark Township, and claim the tenure protection of the Civil Service Act because of its adoption by the voters on November 8, 1960.
There is no issue of fact involved, and plaintiffs and defendants move for summary judgment.

I.
Defendants Doenzelmann, Kummer and Davenport have filed a fourth separate defense to the amended complaint alleging that plaintiffs have failed to exhaust their administrative remedies and therefore are not entitled to any adjudication against the Civil Service Commission or the Department of Civil Service in these proceedings.
There is no question that R.R. 4:88-14 provides that, in the usual case, administrative remedies are to be exhausted before a proceeding is to be started in lieu of prerogative writs. This rule provides as follows:
"Except where it is manifest that the interests of justice require otherwise, proceedings under Rule 4:88 shall not be maintainable, so long as there is available judicial review to a county court or inferior tribunal or administrative review to an administrative agency or tribunal, which has not been exhausted."
It will be noted at the outset that the rule is not absolute by its very terms. The rule was intended as a simple rule *166 of ordinary procedure. Ward v. Keenan, 3 N.J. 298 (1949). The rule has constantly been departed from where the interests of justice require.
The court in Waldor v. Untermann, 10 N.J. Super. 188 (App. Div. 1950), allowed the matter to proceed even though the plaintiff had not exhausted his administrative remedies because (as indicated at page 193) "the matter was of importance to the community and expeditious determination was directly in the public interest." The court also concluded (at page 192) that the matter "did not involve any questions of administrative policy, discretion or judgment." Similarly, the questions involved in the case at bar do not concern any administrative policy, discretion or judgment, and in Nolan v. Fitzpatrick, 9 N.J. 477 (1952), the court stated, at pages 486-487 as follows:
"What are the requirements of justice in the instant case? The question presented in this case is solely one of law. Any determination of that question either by the Director of the Division of Local Government, N.J.S.A. 40:2-53, or by the Division of Local Government, N.J.S.A. 52:27BB would clearly be subject to judicial review, N.J.S.A. 40:2-53 and N.J.S.A. 52:27BB-20. On such judicial review of a question of law the opinions of these administrative tribunals would not be persuasive as they would be on questions of fact within their purview. The only result of requiring an exhaustion of administrative remedies where only a question of law is in issue would be useless delay, and this in the interest of justice cannot be countenanced. The case thus presents another instance (i.e., where the disposition of the matter depends solely on the decision of a question of law) in addition to the two situations specifically stated in Ward v. Keenan where under Rule 3:81-14 the [now R.R. 4:88-14] interests of justice do not require the exhaustion of administrative remedies."
What was said above in Nolan is equally applicable to the case at bar. The question involved in this case is solely a question of law. The only result of requiring an exhaustion of administrative remedies would be useless delay. Therefore, because of the nature of the matter and because the question is solely one of law, this court *167 will proceed and determine the proper construction of the statutes involved.

II.
The plaintiffs base their claim on the provisions of N.J.S.A. 40:69A-207 (Faulkner Act), which provides as follows:
"At 12 o'clock noon on the effective date of an optional plan adopted pursuant to this act, all offices then existing in such municipality shall be abolished and the terms of all elected and appointed officers shall immediately cease and determine; provided, that nothing in this section shall be construed to abolish the office or terminate the term of office of any member of the board of education, trustees of the free public library, commissioners of a local housing authority, municipal magistrates or of any official or employee now protected by any tenure of office law, or of any policeman, fireman, teacher, principal or school superintendent whether or not protected by a tenure of office law. If the municipality is operating under the provisions of Title 11 of the Revised Statutes (Civil Service) at the time of the adoption of an optional plan under this act, nothing herein contained shall affect the tenure of office of any person holding any position or office coming within the provisions of said Title 11 as it applies to said officers and employees. If the municipal clerk has, prior to the effective date of the optional plan, acquired a protected tenure of office pursuant to law, he shall become the first municipal clerk under the optional plan. * * *." (Emphasis supplied)
It is apparent that the manifest legislative intent was to abolish all offices and to terminate the term of offices of all elected and appointed office holders on the effective date, unless such offices came within the saving provisions of three distinct exceptions. Thus, it is clear that under the terms of N.J.S.A. 40:69A-207 officers and employees are protected by the Civil Service statutes if a municipality is operating under the provisions of Title 11 of the Revised Statutes (Civil Service Act) at the time of the adoption of the Faulkner Act. Plaintiffs contend that the Faulkner Act was adopted on November 3, 1959 when the voters approved the same, and since the township was not operating under the provisions of the Civil Service Act on November 3, 1959, defendants are not entitled to the protection *168 of the Civil Service statutes. Defendants contend that the Faulkner Act was not "adopted" until the effective date, namely, January 1, 1961, and since the Civil Service Act was adopted almost two months prior to this date, defendants are entitled to its protection.
To interpret the word "adoption" as meaning "effective date" is to place a rather strained construction on the word, especially when, as here, the effective date of the referendum was later than the date that it was approved. The statute itself imports different meanings to the terms. The statute states that "at 12 o'clock noon on the effective date of an optional plan" (emphasis added) all offices are abolished. However, it gives tenure protection on the effective date of said Faulkner Act to those officers and employees now protected by any tenure of office law. It also affords tenure protection to those holding a position or office if the municipality is operating under the Civil Service statutes at the time of the adoption of the Faulkner Act, and it also affords tenure protection to the municipal clerk if he has acquired tenure prior to the effective date of the Faulkner Act.
Apparently the intent of the Legislature under the provisions of this statute was to draw a distinction between the terms "adoption" and "effective date." The New Jersey State Constitution of 1947, Article XI, draws a distinction between the words "adoption" and "effective date," and the language of the Appellate Division in Chirichella v. Dept. of Civil Service, 31 N.J. Super. 404 (App. Div. 1954), seems to dispose of this question. The court stated as follows:
"In November, 1952, the voters at the General Election adopted Plan `D' of the act known as the `Faulkner Act.' P.L. 1950, c. 210, R.S. 40:69A-1 et seq. to become effective July 1, 1953. At an election held on May 12, 1953, pursuant to the Faulkner Act, the voters elected a mayor and nine councilmen." (Emphasis supplied)
See also Bucino v. Malone, 12 N.J. 330 (1953), in which the court said that the adoption of the plan rests entirely in the hands of the voters.
*169 So therefore, if N.J.S.A. 40:69A-207 were the only statute to be considered, plaintiffs would be entitled to judgments since the Township of Clark was not operating under the provisions of the Civil Service statutes on November 3, 1959, the date of the adoption of the Faulkner Act.
On November 8, 1960, however, the same day that the voters of Clark Township elected a mayor and council, they also adopted Civil Service by voting affirmatively on the following question: "Shall the provisions of subtitle 3, Title 11, Civil Service of the Revised Statutes be adopted?" There was no provision as to when this referendum was to go into effect, so the presumption is that it was to take effect immediately without further action on the part of the township clerk or township council. Ex parte Banta, 25 Cal. App.2d 622, 78 P.2d 243 (Cal. Ct. App. 1938); Brown v. City of Tampa, 149 Fla. 482, 6 So.2d 287 (Fla. Sup. Ct. 1942); Wiegand v. Ferguson, 124 Ohio St. 73, 177 N.E. 35 (Ohio Sup. Ct. 1931); City of Dallas v. Dallas Consolidated Electric St. R. Co., 159 S.W. 76 (Tex. Civ. of App. 1913); 62 C.J.S. Municipal Corporations § 459, p. 890.
The voters of Clark Township adopted on November 3, 1959 the provisions of the Faulkner Act to take effect January 1, 1961, and on November 8, 1960 they adopted the Civil Service Act, which became effective immediately. Consequently, Civil Service was in effect after the adoption of the Faulkner Act, but before its effective date, but was not in effect at the time of the adoption of the Faulkner Act. It must be noted, however, that the said Faulkner Act, N.J.S.A. 40:69A-207, provides in substance that at 12 o'clock noon on the effective date of an optional plan adopted pursuant to this act all offices then existing in such municipality shall be abolished and the terms of all elected and appointed officers shall cease and determine, provided that nothing in this section shall be construed to abolish the office of or terminate the term of office of any official or employee now protected by any *170 tenure of office law. The word "now" is included in the same sentence and is used in setting out one of the exceptions to the abolition of all offices that existed at 12 o'clock noon of the effective date of the Faulkner Act, and should be construed as referring to those officers or employees in office on said effective date. In the case of East Jersey Water Co. v. Board of Conservation & Development, 91 N.J.L. 448, 453 (Sup. Ct. 1918), the court held that the words of a statute referring to water "now being legally diverted" meant water being legally diverted at the time that the statute went into effect, and do not include a future diversion, and it has also been held that the word "now" as used in a statute ordinarily refers to the date of its taking effect and is sometimes used in referring to a time contemporaneous with something done. State ex rel. Brewster v. Mayor and Com'rs of City of Lawrence, 101 Kan. 225, 165 P. 826 (Kan. Sup. Ct. 1917). Applying this rule to the case at bar, the word "now," as used in N.J.S.A. 40:69A-207, should be defined to mean the time that this statute went into effect in Clark Township, which was January 1, 1961. In other words, the term of office of any official or employee who was protected by any tenure of office law at 12 o'clock noon on January 1, 1961 was not terminated, nor was the office or position abolished under the provisions of N.J.S.A. 40:69A-207.
The question to be decided is: Were the defendants Doenzelmann, Kummer and Davenport protected by any tenure of office law on January 1, 1961 at 12 o'clock noon, which was the effective date of the optional plan adopted November 3, 1959?
N.J.S.A. 11:21-5.2 provides as follows:
"In any municipality which heretofore has adopted the provisions of subtitle three of Title 11 of the Revised Statutes, every officer, clerk and employee in the employ of such municipality who, at the time of the filing of the petition which results in the adoption of said subtitle by such municipality, was in the active service of said municipality and was on the regular pay roll thereof and who shall have been in such service and on such pay roll continuously for a *171 period of not less than one year prior to the time of the filing of the said petition and who was not a temporary employee or temporarily in such service, shall be deemed to be in the employ of such municipality at the time of the adoption of said subtitle by the municipality, notwithstanding that his employment had not been theretofore authorized nor his compensation fixed under an ordinance adopted by the governing body of said municipality pursuant to section 40:48-1(3) of the Revised Statutes or any other law, and the provisions of said subtitle shall be applicable to any such officer, clerk or employee to the same extent as though his employment had been authorized under such an ordinance." (Emphasis supplied)
Each of the three defendants was in the active service of the municipality and was on the regular payroll continuously for more than a year prior to the filing of the petition on August 22, 1960. Defendant Doenzelmann had been serving continuously since April 3, 1951, and defendants Kummer and Davenport had been serving continuously since May 20, 1952 and June 8, 1953, respectively, and thus are considered to have been in the employ of the municipality at the time of the adoption of Civil Service on November 8, 1960.
N.J.S.A. 11:21-6 provides as follows:
"Hereafter, all officers, clerks and employees in the employ of any county, municipality or school district at the time of the adoption of this subtitle by such county, municipality or school district, coming within the competitive or noncompetitive class of the civil service, except such as may be appointed between the time of the filing of the petition for the adoption of this subtitle and the holding of the referendum for the adoption thereof in such county, municipality or school district, shall continue to hold their offices or employments, and shall not be removed therefrom except in accordance with the provisions contained in this subtitle relative to the removal of persons in the competitive or noncompetitive class, it being the intention hereby to include any and all such officers, clerks, employees and laborers within the classified service of a county, municipality or school district, and to be subject in all respects to the provisions of this subtitle."
Thus, it is clear from a reading of this statute that defendants, who were in the employ of the township at the time of the adoption of the Civil Service Act and who were so employed for more than a year prior to the filing *172 of the petition on August 22, 1960, acquired tenure on November 8, 1960 and were protected by the provisions of N.J.S.A. 11:21-5.2 and N.J.S.A. 11:21-6 of the Civil Service Act on January 1, 1961, the effective date of the Faulkner Act. Our courts have held that the purpose of Civil Service legislation was to put positions in the classified service beyond political control, or the exercise of partisanship and personal favoritism, in order to secure the best public service for the municipality, Scancarella v. Dept. of Civil Service, 24 N.J. Super. 65 (App. Div. 1952), and that Civil Service law is to be liberally interpreted to further its wholesome purpose. Marra v. Parsippany-Troy Hills Township, 24 N.J. 113 (1957); Melchionne v. City of Newark, 60 N.J. Super. 104 (App. Div. 1960).
N.J.S.A. 11:21-5.2 and N.J.S.A. 11:21-6 definitely provide for tenure protection for these three defendants, and the case of Devlin v. Cooper, 125 N.J.L. 414 (E. & A. 1940), holds in effect that the Civil Service Act is a tenure of office law. See also Blum v. Civil Service Commission, 129 N.J.L. 75 (E. & A. 1942). Therefore, it is evident from an examination of the above that defendants on January 1, 1960 at 12 o'clock noon were officials and employees protected by a tenure of office law as provided by the Faulkner Act (N.J.S.A. 40:69A-207).

III.
The plaintiffs point out in their brief that the Faulkner Act was adopted after the Civil Service Act and that where there is an irreconcilable conflict between the later statutes and the prior statutes, the later statutes will control, as it is the later expression of the will of the Legislature. This is a correct statement of the law. Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199, 225 (1960); Newark v. Dept. of Civil Service, 68 N.J. Super. 416 (App. Div. 1961).
It is the opinion of this court, as explained above, that there was no irreconcilable conflict between the two *173 statutes. It was the apparent intention of the voters, when they adopted Civil Service by referendum November 8, 1960, one year after the adoption of the Faulkner Act on November 3, 1959 that both statutes should be construed together. The adoption of the Civil Service by referendum was the later expression of the will of the people. It is assumed that the voters were thoroughly conversant with their own prior referendum when they voted to adopt Civil Service, and they were presumed to know the effect of the later referendum. In exercising the power of initiative and referendum or in exercising the power of amendment by initiative and referendum, the electors must be fairly informed of the purpose and effect of the proposed change. Usually, by express legal provision, the said proposals are printed in full in newspapers and are otherwise made known to the voter.
In fact, the Civil Service Act (N.J.S.A. 11:20-1) provides as follows:
"When a petition is presented to the clerk of the governing body of a county or municipality, not operating under this subtitle, requesting that the question of the adoption of this subtitle be submitted to the voters thereof, the clerk shall, fifteen days thereafter, give public notice that the question will be submitted to the voters at the next general or municipal election, whichever shall first occur, and make public notice thereof by publication in one or more newspapers published in the county or municipality, if there be one published in the municipality, if not, then in one or more newspapers published in the county in which the municipality is located, to be designated by the clerk, once a week for at least four weeks, and by posting such notice in five of the most public places in the county or municipality for at least four weeks before the election. The clerk shall also follow the procedure necessary to have the question submitted by the proper printing of the same upon the ballots to be used at the election."
Consequently, the Civil Service Act, adopted November 8, 1960, must be considered. Furthermore, a referendum adopted by the electors can be repealed only by a vote of the electorate in the same manner in which it was *174 adopted. See 6 McQuillin, Municipal Corporations (3d ed.), secs. 21.02, 21.03, pp. 176, 177, 178.
So it would seem that the voters of Clark Township, by the later referendum of November 8, 1960, apparently intended that Civil Service should go into effect on the date of the adoption of the referendum and be construed together with the Faulkner Act adopted one year earlier. The voters have in two consecutive elections approved the Faulkner Act and the Civil Service Act, so that both statutes are applicable and should be construed together. This is in accordance with the rules of statutory construction. In State v. Brown, 22 N.J. 405, 415 (1956), the court stated as follows:
"The question is in essence one of legislative intent. * * *. The sense of a law is to be gathered from its object and the nature of the subject matter, the contextual setting, and the statutes in pari materia. Hackensack Water Co. v. Ruta, 3 N.J. 139 (1949). A statute is to be construed as a whole with reference to the system of which it is a part. Maritime Petroleum Corporation v. City of Jersey City, 1 N.J. 287 (1949). And statutes upon cognate subjects may be considered in arriving at the legislative intention, though not strictly in pari materia. This principle is essential to give unity to the laws, and to connect them in a symmetrical system. Modern Industrial Bank v. Taub, 134 N.J.L. 260 (E. & A. 1946). The import of any word or phrase is to be gleaned from the context and statutes in pari materia. Public Service Electric & Gas Co. v. City of Camden, 118 N.J.L. 245 (Sup. Ct. 1937). Scholastic strictness of definition cannot be adopted if it prevents a `reasonable construction.' Wright v. Vogt, 7 N.J. 1 (1951)."
The court in all instances must look to see whether a reasonable result may be arrived at by reading the different statutes. As was stated in the case of Clifton v. Passaic County Board of Taxation, 28 N.J. 411:
"The reconciliation of apparently conflicting statutes to conform to the spirit of the legislation as a whole is a common exercise of the judicial interpretive function. Turon v. J. & L. Construction Co., 8 N.J. 543 (1952). A construction `calling for unreasonable results will be avoided where reasonable results consistent with the indicated purpose of the act as a whole are equally possible.' Elizabeth Federal Savings & Loan Ass'n v. Howell, 24 N.J. 488, 508 (1957)." *175 Statutes in pari materia, although in apparent conflict, are so far as reasonably possible construed to be in harmony with each other. Newark v. Dept. of Civil Service, 68 N.J. Super. 416 (App. Div. 1961). The first duty incumbent upon any court is to seek all means possible to reconcile the statutes when there is no express repeal and repeals by implication are not favored.
Plaintiffs contend that the purported adoption of the Civil Service Act was nugatory and had no effect on the status of defendants until after the effective date of the adoption of the Faulkner Act. In other words, plaintiffs contend that the word "adoption," as used in N.J.S.A. 40:69A-207 (Faulkner Act), means the date on which the said act was approved by the voters. This court agrees with this contention. However, plaintiffs further contend that the same word "adoption," as used in N.J.S.A. 11:21-5.2 and N.J.S.A. 11:21-6 (Civil Service Act), does not mean the date on which the said act was approved by the voters, but means on or after the effective date of the Faulkner Act. This court does not agree with this contention.
The legislative purpose and the objective in including this provision in the Faulkner Act to the effect that nothing in said act shall be construed to abolish the office of or terminate the term of office now protected by any tenure of office law, was to protect the rights of those who had tenure under any tenure of office law upon a change-over in government incident to an optional plan under the Faulkner Act. Our courts have in the past used related statutes to interpret the meaning of this very transitional section in regard to other situations. Myers v. Cedar Grove Township, 66 N.J. Super. 530 (App. Div. 1961).
Plaintiffs concede that the provisions of the Civil Service Act and the Faulkner Act are in pari materia, but there seems to be no basis for the contention of plaintiffs wherein they state that the cited sections of the Civil Service Act and the Faulkner Act are in conflict. On the contrary, in *176 the case of Devlin v. Cooper, 125 N.J.L. 414 (E. & A. 1940), the court considered both R.S. 11:28-2 and R.S. 40:71-9 (Walsh Act), which is a counterpart of N.J.S.A. 40:69A-207 (Faulkner Act). There it was stated:
"It is possible to give effect to both provisions without irreconcilability, so that both can stand."
The intent of the Civil Service Act is to secure tenure for those employees who come within its scope and to give protection against dismissal and other types of discrimination to those holding positions which the Legislature placed in the classified service. Scancarella v. Dept. of Civil Service, supra.
R.S. 11:28-2 (Civil Service Law) provides:
"* * * When the form of government of any municipality shall have been or shall be changed, the officers and employees or persons in the classified and unclassified service of any subdivision of the government * * * where the civil service laws are operating shall be continued in service * * *." (Emphasis supplied)
Thus, R.S. 11:28-2 clearly endeavors to protect those officers, employees or persons covered by the Civil Service Act at the time that the form of government "shall be" changed, which was January 1, 1961, the effective date of the adoption of the Faulkner Act in Clark Township, which said Faulkner Act provided protection on said effective date for all of those now protected by any tenure of office laws. Furthermore, on said effective date, the Civil Service laws were operating. See R.S. 11:28-2, supra.

IV.
Plaintiffs' affidavits show that none of plaintiffs were appointed by or under authority of the Civil Service law and regulations, despite the admitted fact that at the time of their appointment Title 11 of the Revised Statutes was fully effective and operative with respect to Clark Township.
*177 As shown by plaintiffs' affidavits, the moving defendants, who are the present incumbents, were at no time removed from their office or employment "with the approval of the mayor" (emphasis added) or in compliance with "the provisions of the Revised Statutes, Title 11, Civil Service * * *," as required by the Faulkner Act (N.J.S.A. 40:69A-43(d)). In a proceeding such as this, plaintiffs may have judgment only on the strength of their own title and not upon any infirmity or weakness in defendants' title. Morgan v. Mayor and Council of Borough of Roselle Park, 129 N.J.L. 233 (Sup. Ct. 1944).
A review of the applicable statutes, supra, reveals that the Faulkner Act gives tenure protection if the municipality is operating under Civil Service at the time of the adoption of the said act. It also gives tenure protection on the effective date to those now protected by any tenure of office law. This applies to anyone who acquired tenure subsequent to the adoption of the Faulkner Act, but prior to the effective date of the same.
Thus, defendant incumbents acquired tenure on November 8, 1960 when N.J.S.A. 11:21-5.2 and N.J.S.A. 11:21-6 and the other provisions of the Civil Service law were adopted, because the said N.J.S.A. 11:21-5.2 and N.J.S.A. 11:21-6 afford tenure protection on the date of their adoption. Furthermore, the form of government of the township changed on January 1, 1961 and on that date the Civil Service laws were operating in the township and defendants are entitled to continue in service according to the provisions of R.S. 11:28-2. This is the conclusion reached by this court in attempting to reconcile the applicable statutes and in construing them together as a whole.
Therefore, motion for summary judgment made in behalf of plaintiffs is denied. Motion for summary judgment made in behalf of defendants is granted.